IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 12, 2002 Session

## TZE-PONG "RAYMOND" KU v. STATE OF TENNESSEE

**Appeal from the Claims Commission of the State of Tennessee**
**No. 20200433      Vance W. Cheek, Jr., Commissioner**

**FILED DECEMBER 17, 2002**

**No. E2002-01076-COA-R3-CV**

Tze-Pong "Raymond" Ku ("Plaintiff") is a student at the East Tennessee State University College of Medicine ("College"). After completing his first two years of study, Plaintiff was required to take the USMLE Step 1 examination. He took this examination and failed. Thereafter, the College removed Plaintiff from his third year clerkships and eventually created a list of requirements he had to meet in order to be allowed to resume his classes. After successfully suing the College in federal court based on a procedural due process violation, Plaintiff brought the present lawsuit for damages against the State of Tennessee claiming breach of written contract, to wit: his letter of acceptance to the College and the College's student handbook. The Claims Commission concluded these documents did not constitute a written contract and dismissed the lawsuit for lack of subject matter jurisdiction. Plaintiff appeals, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Claims Commission Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Arthur F. Knight, III, and Samuel W. Brown, Knoxville, Tennessee, for the Appellant Tze-Pong "Raymond" Ku.

Paul G. Summers, Attorney General, Michael E. Moore, Solicitor General, and Donald R. Ungurait, Assistant Attorney General, Nashville, Tennessee, for the Appellee State of Tennessee.

## OPINION

## Background

This case involves a claim by Plaintiff against the State for breach of contract. According to the complaint, Plaintiff was accepted to medical school and began his first year in the fall of 1996. Plaintiff successfully completed his first and second year courses. During the summer following the second year, Plaintiff was required to take the USMLE Step 1 examination, as set forth in the College's policies and procedures. This examination must be passed before the beginning of the student's fourth year. Plaintiff claims students who do not pass this examination are allowed to begin their third year clerkships, but they are subject to dismissal if they do not pass this examination after three attempts. Plaintiff failed the examination on his first attempt and intended to retake the examination in October of 1998. Plaintiff began his third year clerkship in the summer of 1998, but claims he was pulled from all of his rotations by the College's administration. The reasons given Plaintiff for being pulled from rotations were alleged behavioral problems. Plaintiff claims he never was told of any behavioral problems prior to being pulled from the rotations.

Plaintiff pursued the College's internal appeal procedures in an attempt to maintain his enrollment. He was denied relief at each level of the process. Plaintiff even underwent psychological testing at the College's request. In September of 1999, Plaintiff requested he be allowed to return to his medical studies. In response, Daniel Wooten ("Wooten"), the Executive Associate Dean for Academic and Faculty Affairs, sent Plaintiff a letter detailing certain conditions Plaintiff had to agree to in order to return to classes. These conditions were: 1) Plaintiff's retaking his sophomore classes; 2) always being on time for class; and 3) being given a "battery" of oral exams at the end of the 1999 fall semester and the 2000 spring semester which must be passed. Plaintiff also was informed a structured evaluation of his performance would be conducted at the end of each semester prior to his continuing in school. According to Wooten's letter, only if Plaintiff successfully completed the foregoing would he be allowed to retake the USMLE Step 1 examination.

Plaintiff sued in federal court asserting, among other things, that he was denied procedural due process by the College. On June 7, 2001, the United States District Court for the Eastern District of Tennessee issued a memorandum opinion finding Plaintiff's constitutional due process rights had been violated. The United States District Court ordered the College to allow Plaintiff to re-enter medical school, resume his junior clerkships, and take the USMLE Step 1 examination when he felt ready to do so.

Plaintiff then brought this lawsuit against the State claiming breach of a written contract. According to Plaintiff, he had a written contract for the provision of educational services between him and the College by virtue of the College's letter of acceptance, the College's catalogs, and other relevant written policies and procedures. Plaintiff sought one million dollars in compensatory damages.

The State filed a motion to dismiss claiming there was no written contract as required by Tenn. Code Ann. § 9-8-307(a)(1)(L), which provides for a cause of action against the State based on:

> Actions for breach of a written contract between the claimant and the state which was executed by one (1) or more state officers or employees with authority to execute the contract ….

The State argued that because there was no written contract, the Claims Commission lacked subject matter jurisdiction over the claim.

Plaintiff responded to the motion to dismiss by claiming the East Tennessee State University Medical Student Handbook ("Handbook" or "Catalog") and his acceptance letter, both of which were signed by a representative of the College, constituted a written contract. The Handbook is signed by Wooten, and the introduction states, *inter alia*:

> Complex social institutions such as medical schools must have pervasive rules that govern conduct and operational effectiveness. Thus, the James H. Quillen College of Medicine has proclaimed policies, procedures, and guidelines to monitor student affairs that are designed to ascertain that all members of our academic community are knowledgeable about what is expected of them and are treated justly.

> The primary purpose of this manual is to incorporate into a single volume those policies, procedures, and guidelines that most directly impact students. Thus, it is imperative that all students familiarize themselves with the contents.

> Obviously, no policy statement, whatever craft accompanies its establishment, can fully anticipate all situations. However, our College of Medicine recognizes its obligation to maintain responsiveness to individual needs. Therefore, any student who believes that individual circumstances justify action inconsistent with a certain policy stated herein should come to my office without hesitation.…

At the beginning of the section of the Handbook setting forth the College's Policies and Procedures, the following "disclaimer" is found:

**Disclaimer**

The policies contained herein are provided to give a general understanding of the regulations governing East Tennessee State University and the James H. Quillen College of Medicine. They are subject to revision at any time with little or no advance notification. The College of Medicine assumes no responsibility for errors in or misrepresentation of these policies. For more information on the official policies of ETSU and the College of Medicine contact the Office of Academic Affairs.

The Commissioner agreed with the State's position and concluded there was no written contract between the parties, and, therefore, dismissed the Complaint for lack of subject matter jurisdiction. Plaintiff appeals, arguing the letter of acceptance and the Handbook constitute a written contract.

**Discussion**

Since matters outside the pleadings were considered by the Commission when it granted the State's motion to dismiss, we will treat the State's motion as a motion for summary judgment in accordance with Rule 12.02.[1] The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.

---

[1] In relevant part, Rule 12.02 provides that if, "on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89. A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)(quoting *Byrd v. Hall*, 847 S.W.2d at 211).

Tenn. Code Ann. § 9-8-307 confers jurisdiction on the Tennessee Claims Commission to entertain monetary claims against the State based upon certain specified causes of action. Tenn. Code Ann. § 9-8-307(a)(1)(L) states that the Commission has jurisdiction to determine a monetary claim against the State based upon "[a]ctions for breach of a written contract between the claimant and the state which was executed by one (1) or more state officers or employees with

authority to execute the contract …." What we must decide on this appeal is whether the undisputed material facts demonstrate Plaintiff did not have a written contract with the State.

Plaintiff's main argument that the Handbook constitutes a written contract is based on *Lesure v. State*, No. 89-347-II, 1990 Tenn. App. LEXIS 355 (Tenn. Ct. App. May 18, 1990). In *Lesure*, this Court concluded there was a contract between that plaintiff and the state based on Tennessee State University's catalog. The catalog in that case, however, expressly stated the provisions of the "catalog constitute a contract between the university and a student who commences any program of study insofar as it relates to the degree requirements for that program during the effective period of this catalog . . . ." *Lesure*, 1990 Tenn. App. LEXIS 355 at * 6. No such language is contained in the College's handbook. In addition to the quoted language, the *Lesure* case was decided pursuant to a version of Tenn. Code Ann. § 9-8-307(a)(1)(L) which no longer exists. These are distinctions with a difference, as recently noted by this Court in *Petty v. State*, 2002 Tenn. App. LEXIS 193 (Tenn. Ct. App. Mar. 18, 2002), *no appl. perm. appeal filed*, which involved a claim that the University of Tennessee's student catalog constituted a written contract. In *Petty*, this Court stated:

Plaintiff alleges that she has a written contract with the University of Tennessee which is embodied in the student catalog. She relies upon the unreported opinion of this Court in *Lesure v. State*, 1990 WL 64533 (Tenn. Ct. App. May 18, 1990), wherein this Court held that the catalog of Tennessee State University constituted a contract pursuant to Tenn. Code Ann. §9-8-307(a)(1)(L). Reliance on the *Lesure* case is misplaced, because the catalog at issue in *Lesure* expressly stated that its provisions constituted a contract between the university and the student, and the University of Tennessee catalog at issue does not. Moreover, the *Lesure* case was decided when a prior version of Tenn. Code Ann. §9-8-307(a)(1)(L) was in effect, which merely required the action to be founded upon "any express contract or breach thereof" but did not require the contract to be written and signed by an authorized officer or employee. Thus, the *Lesure* case is not applicable.

Finally, plaintiff seeks to bolster her argument that a written contract existed by stating that the University's catalog, in conjunction with her transcript of grades which contains the signature of the registrar, satisfies the requirements of Tenn. Code Ann. §9-8-307(a)(1)(L). The transcript, however, does nothing more than report the grades which plaintiff earned in her course work. We find no language in the transcript which would constitute the terms of a contract.

As the Supreme Court observed in *Johnson v. Central Nat'l Ins. Co.*, 356 S.W.2d 277, 281 (Tenn. 1962):

> While a contract may be either expressed or implied, or written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.

> The transcript does not contain any definite terms to be enforced, and does not result from a meeting of the minds. Reading it in conjunction with the catalog is of no consequence, since the catalog explicitly sets forth that its terms are subject to change without notice, and that it should not be relied upon.

> We hold that plaintiff has failed to satisfy the requirements of Tenn. Code Ann. §9-8-307(a)(1)(L), and we affirm the Commissioner's Order dismissing this action.

*Petty*, 2002 Tenn. App. LEXIS 193 at ** 2-4. By way of footnote, the *Petty* Court observed the University of Tennessee catalog contained a statement which told students that its provisions were constantly under review, subject to change at any time, and should not be relied upon. *Id.* at *3 fn.1.

We believe the present case is quite similar to *Petty*. The Handbook does not state it is intended to be a contract. The Handbook acknowledges the difficulty in anticipating all situations, and that the contents of the Handbook are subject to revision at any time "with little or no advance notification." Furthermore, the College expressly assumed no responsibility for errors in or misrepresentations of the policies. After reviewing the entire Handbook[2], it is our opinion the undisputed material facts demonstrate the State did not intend to be contractually bound to the contents of the Handbook. *Cf. Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. Ct. App. 1988)(While a handbook can be part of an employment contract, "the specific language of the handbook must show contractual intent."). We agree with the Commission that the College's Handbook does not constitute a written contract.

Plaintiff also argues the letter wherein he was accepted to the College also constitutes a written contract. The letter is dated July 14, 1992, and extends an offer to Plaintiff to "join East Tennessee State University's Premedical-Medical Program." The letter also explains certain requirements Plaintiff must undertake should he choose to accept the invitation. The undisputed material facts show: a) Plaintiff was offered acceptance into the College; b) Plaintiff accepted the

---

[2] Plaintiff claims the Handbook constitutes a contract, but points us to no specific language evidencing the College's intent to be contractually bound to its contents.

offer; and c) Plaintiff was admitted into the College. Even assuming, without deciding, the offer to join the College's medical program was a written contract for purposes of Tenn. Code Ann. § 9-8-307(a)(1)(L), this contract had long since been completed by the time the events giving rise to the present lawsuit occurred and, therefore, cannot form the basis of the present lawsuit.

The written documents relied upon by Plaintiff, either separately or together, do not constitute a written contract. Therefore, the decision of the Claims Commission dismissing Plaintiff's claim for lack of subject matter jurisdiction was proper. We hold Plaintiff has failed to satisfy the requirements of Tenn. Code Ann. § 9-8-307(a)(1)(L), and we affirm the Commissioner's Order dismissing this action.

### Conclusion

The judgment of the Claims Commission is affirmed, and this cause is remanded to the Claims Commission for such further proceedings as may be required, if any, consistent with this Opinion. The costs on appeal are assessed against the Appellant Tze-Pong "Raymond" Ku, and his surety.

_____
D. MICHAEL SWINEY, JUDGE