IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
AUGUST 6, 2003 Session

# FOUR SEASONS HEATING & AIR CONDITIONING, INC.
## v.
## BEERS SKANSKA, INC.

**An Appeal from the Chancery Court for Montgomery County**
**No. MC CH CV CD 02-03     Carol Ann Catalano, Chancellor**

_____

**No. M2002-02783-COA-R3-CV - Filed December 23, 2003**

_____

This is a breach of contract case. The defendant general contractor was hired to construct a building on a state college campus. The contractor hired the plaintiff subcontractor to perform substantial work on the job. During the course of the project, the subcontractor sought additional labor costs incurred in the project. This issue was not resolved. Later, the subcontractor sought from the contractor the retainage kept by the contractor. When the check was ready, the subcontractor sent its project manager to retrieve it. In order to get the check, the project manager was required by the contractor to sign a document releasing all claims between the contractor and the subcontractor. Later, the subcontractor filed this lawsuit, seeking the additional labor costs. The contractor filed a motion to dismiss, arguing that, by the project manager's signature on the release, the subcontractor waived its claim to the additional labor costs. The subcontractor argued that its project manager did not have the authority to bind the company to the release. After a hearing, the trial court dismissed the subcontractor's complaint. The subcontractor now appeals. We reverse, finding that the evidence was insufficient to establish as a matter of law that the project manager had actual or apparent authority to bind the subcontractor or to establish as a matter of law that the subcontractor ratified the release signed by the project manager.

**Tenn. R. Civ. P. 3 Appeal as of Right; Judgment of the Chancery Court is
Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

David K. Taylor and Jennifer L. Ditty, Nashville, Tennessee, for the appellant, Four Seasons Heating and Air Conditioning, Inc.

Richard M. Smith and H. Brent Patrick, Nashville, Tennessee, for the appellee, Beers Skanska, Inc.

**OPINION**

In July 1998, Respondent/Appellee Beers Skanska, Inc. ("Beers"), formerly known as Patten-Beers Constructors, Inc. ("Beers"), entered into a contract with the State of Tennessee to be the general contractor for the construction of a new science building at Austin Peay State University ("Project"). On September 24, 1998, Beers entered into a subcontract for services ("Subcontract") with Petitioner/Appellant Four Seasons Heating and Air Conditioning, Inc. ("Four Seasons"), a corporation wholly owned by Wayne Gulledge ("Gulledge") and his wife, Sandra Gulledge ("Mrs. Gulledge").

By the end of the Project, the total compensation due Four Seasons under the contract with Beers exceeded $6 million. Throughout the course of the Project, Beers made partial payments based upon the pay applications submitted by Four Seasons. After each partial payment was made, Mrs. Gulledge signed a partial release and waiver indicating that the payment had been received by Four Seasons.

On December 2, 1999, in the middle of the Project, Four Seasons made a formal demand upon Beers for an additional payment of $177,991 for additional labor costs incurred by Four Seasons under the Subcontract ("Labor Claim"). The additional labor costs were based on the difference between the estimate of anticipated labor costs used by Four Seasons to calculate its bid and the state wage rates that applied to the Project. Though Four Seasons continued to work on the project, the parties continued to negotiate over the disputed discrepancy. The last communication in the record between the parties regarding the labor cost issue is a February 6, 2001 letter from Gulledge to Beers, requesting the additional payment by February 15, 2001. Beers did not respond in writing to this letter. Beers did not pay the Labor Claim. Shortly before Four Seasons filed its lawsuit in this case, Beers finally reduced its denial of the Labor Claim to writing.[1]

On December 2, 2001, Four Seasons' subcontractor, Mechanical Automated Control Systems, Inc. ("MAC"), filed a lawsuit against both Four Seasons and Beers and their bonding companies ("MAC Lawsuit"), asserting claims arising out of the Project. It is undisputed that the claims in the MAC Lawsuit are unrelated to the Labor Claim.

As with many construction contracts, the Subcontract at issue between Beers and Four Seasons permitted Beers to withhold from Four Seasons portions of the Subcontract funds until the end of the work, commonly referred to as a "Retainage." Before and after the filing of the MAC Lawsuit, Gulledge requested that Beers pay all, or at least some portion, of the Retainage to Four Seasons. Some of the undisputed Retainage funds were withheld by Beers from Four Seasons because of the MAC Lawsuit.

---

[1] Four Seasons alleges that Beers' failure to reduce its decision to writing in a timely manner constituted a violation of Article 14(b) of the Subcontract.

In February 2002, while the MAC lawsuit was still pending, Gulledge asked Four Seasons' project manager, Wendell Williams ("Williams"), to call an employee of Beers, Brian Carter, and ask about payment of any undisputed funds. On February 21, 2002, Beers called Four Seasons' office and told Four Seasons that a check in the amount of $43,249.58 was ready to be picked up. This check was not specified as payment for any portion of the Labor Claim. On that day, Gulledge sent Williams to collect the payment from Carter. When Williams arrived to pick up the check, Carter had him sign a document entitled "Final Release of Lien Waiver." The Release states that it is a waiver and relinquishment of all of Four Seasons' claims against Beers and others relating to "causes of action, suits, accounts, debts, and demands, whether known or unknown . . . arising out of or related to . . . the Project." Williams was not given a copy of the Release, and Gulledge claims that he did not find out about the existence of the Release until later, through counsel in this lawsuit.

On May 28, 2002, Four Seasons filed a lawsuit against Beers in the court below, seeking payment for the Labor Claim under a breach of contract theory. On June 24, 2002, Beers filed an answer to the complaint and a motion to dismiss, denying liability and asserting, among other things, that the Release signed by Williams constituted a release of all the claims of Four Seasons against Beers, including the Labor Claim. Along with the answer and the motion to dismiss, Beers filed a memorandum of law and attached to it copies of the general contract agreement, the Subcontract, and the Release.

On October 7, 2002, Four Seasons filed a response to the motion to dismiss, maintaining that material issues of fact existed concerning the execution of the Release and whether it applied to the Labor Claim. Four Seasons attached to its response affidavits by Gulledge and Williams, asserting that Williams was not given authority to sign the Release on behalf of Four Seasons. Four Seasons noted that Mrs. Gulledge was the secretary-treasurer of the corporation, and that, during the course of the entire Project, she had been signing the partial releases to obtain payment from Beers. Four Seasons also argued in its response that Williams had no apparent authority to sign the Release, because there was no evidence that the principals of the company, the Gulledges, ever took any action to cloak him with such authority. Finally, Four Seasons argued that it did not ratify the Release signed by Williams, because its principals took no action to confirm the terms of the Release. At minimum, Four Seasons argues, there was a genuine issue of material fact as to the application of the Release to this litigation.

On October 11, 2002, Beers filed a reply, attaching the affidavit of Steve Morgan ("Morgan"), a senior project manager for Beers with responsibility for ensuring that project creditors are paid and that appropriate release documentation is executed. In his affidavit, Morgan stated that "[i]t is not unusual in the construction industry for a project manager to pick up contract payments and execute any related documentation." He also stated that, on other projects Beers worked on with Four Seasons, unrelated to the Project at issue in this case, "project managers for Four Seasons have collected contract balances and executed release documentation on more than one occasion." Morgan further asserted that, at all pertinent times, "representatives of Beers were of the opinion that Wendell Williams possessed the necessary authority to secure payment and execute release documentation."

On October 14, 2002, the trial court heard arguments on the motion to dismiss. On October 18, 2002, the trial court entered an order dismissing Four Seasons' claim against Beers. The order did not include an explanation of the trial court's reasoning. From that order, Four Seasons now appeals.

Because the trial court relied upon matters outside the original pleadings when it granted Beers' motion to dismiss, we will treat Beers' motion as a motion for summary judgment, in accordance with Rule 12.02 of the Tennessee Rules of Civil Procedure.[2] *See Ku v. State*, 104 S.W.3d 870, 873 (Tenn. Ct. App. 2002). The standard for reviewing a grant of summary judgment is well established. A grant of summary judgment is reviewed *de novo* on the record, with no presumption of correctness afforded to the trial court's determination. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). "Our task is confined to reviewing the record to determine whether the requirements of [Tennessee Rule of Civil Procedure] 56 have been met." *Id.* Under Rule 56.04 of the Tennessee Rules of Civil Procedure, summary judgment is appropriate where there is no genuine issue of material fact to be decided, and the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993)). The burden is on the moving party to show that its motion satisfies these requirements. *Id.* Once that burden is satisfied, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *Id.* (citing *Byrd*, 847 S.W.2d at 215).

In reviewing evidence in the summary judgment context, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Ku*, 104 S.W.3d at 874. Summary judgment is appropriate when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *Id.* We now review the trial court's determination in light of this standard.

On appeal, Four Seasons makes the same arguments as it made in the trial court. Four Seasons asserts that the evidence it submitted to the trial court created genuine issues of material fact as to (1) whether Williams had actual or apparent authority to bind Four Seasons to the terms of the Release; (2) whether Four Seasons ratified the Release signed by Williams; and (3) whether the Release embodies the parties' intention to release the Labor Claim as described in the petition. In response, Beers argues that, while there may be a dispute about whether Williams had *actual*

---

[2]Rule 12.02 provides in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Tenn. R. Civ. P. 12.02.

authority to bind Four Seasons to the terms of the Release, the undisputed evidence shows that he at least had the *apparent* authority to do so. In the alternative, Beers argues that, Four Seasons' acceptance of the payment constituted ratification of the Release. Overall, Beers asserts that the Release clearly encompasses the Labor Claim dispute and, therefore, operates to bar Four Seasons from filing a lawsuit to recover those payments.

There is little evidence in the record showing that Williams had actual authority to sign the Release at issue, and Beers as much as concedes this on appeal. The closer question is whether Williams had apparent authority to sign the Release and to bind Four Seasons to its terms. "It is well settled that apparent authority must be established through the acts of the principal rather than those of the agent." ***Mechanics Laundry Serv. v. Auto Glass Co. of Memphis***, 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002). The Supreme Court of Tennessee has discussed apparent authority:

> The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent.

***Southern Rwy. Co. v. Pickle***, 197 S.W. 675, 677 (Tenn. 1917) (quoting 2 Corpus Juris 574, 575). In ***White v. Methodist Hosp. S.***, 844 S.W.2d 642 (Tenn. Ct. App. 1992), the court stated:

> Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude him from denying another's agency. ***Kelly v. Cliff Pettit Motors***, 191 Tenn. 390, 234 S.W.2d 822 (1950). Generally, to prove apparent agency one must establish (1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment. ***Oppenheimer v. Wooline***, 4 Tenn.Civ.App. 134 (1834). See also ***Southern Railway Co. v. Pickle***, 138 Tenn. 238, 197 S.W. 675 (1917) and Am.Jur.2d *Agency*, §§ 19 and 80 (1986).

***White***, 844 S.W.2d at 646. Thus, to show that Williams had the apparent authority to execute the Release on behalf of Four Seasons, Beers must show that Four Seasons actually or negligently acquiesced in Williams signing the Release, that Beers had a reasonable, good faith belief that Williams had such authority, and that Beers relied on Williams' authority to its detriment.

In ***Mechanics Laundry Serv. v. Auto Glass Co. of Memphis, Inc.***, 98 S.W.2d 151 (Tenn. Ct. App. 2002), the plaintiff laundry service sued the defendant corporation for breach of contract for unpaid accounts, relying on a service contract signed by a store manager at one of the defendant's business locations.[3] ***Mechanics Laundry Serv.***, 98 S.W.2d at 153. The parties filed cross-motions for summary judgment. While the plaintiff relied on the plain terms of the contract, the defendant argued that the store manager who signed the contract had no authority to bind the corporation. Both parties submitted affidavits in support of their positions. The plaintiff's affidavits asserted that the store manager represented that she had full authority to enter into contracts for the corporation, and that her superiors also represented "that she had full authority to enter into contracts." ***Id.*** at 154. The defendant's affidavits, on the other hand, stated that the store manager was responsible only for the day to day operations of the store location, and was not authorized to sign contracts binding the corporation. The defendant's affidavits also said that the president of the defendant corporation had no knowledge about the execution of the contract in 1997 until several weeks later. When he finally learned of the contract, he notified the plaintiff that the store manager who signed the contract was no authorized to do so. The store manager's affidavit also stated that she was not authorized to sign contracts on behalf of the corporation, and that she did not remember signing the contract. ***Id.*** at 156-57. Based on that evidence, the trial court granted the plaintiff's motion for summary judgment. ***Id.*** at 153. The defendant appealed.

The appellate court reversed the award of summary judgment in favor of the plaintiff and granted summary judgment to the defendant. With respect to apparent authority, the appellate court noted that the plaintiff's affidavit stated merely that "it was . . . represented to us by [the store manager's] superiors that she had full authority to enter into contracts." Noting that apparent authority is established through the acts of the principal, the appellate court concluded that the assertions in the affidavit were bare conclusory statements, devoid of facts or details, that did "not rise to the dignity of evidence that would support Plaintiff's claim of apparent authority." ***Id.*** at 158. The court noted that the president of the defendant corporation did not know about the contract when it was signed, and that, when the president learned of the contract, the corporation immediately notified the plaintiff that the person who signed the contract was not authorized to do so. ***Id.*** at 158. Furthermore, the record included no evidence that the plaintiff had relied to its detriment on the 1997 contract. Therefore, because there was evidence to show that the store manager did not have the apparent authority to execute the contract on behalf of the corporation, and the evidence to the contrary was insufficient to create a genuine disputed fact, the appellate court reversed the grant of summary judgment to the plaintiff and granted summary judgment to the defendant corporation. ***Id.*** at 159.

---

[3]The evidence showed that, in 1995, the parties had entered into a valid rental agreement for services. ***Mechanics Laundry Serv.***, 98 S.W.2d at 153. That contract was scheduled to expire in February 1998. ***Id.*** at 154. In September 1997, during the time period in which the original contract was in effect, the store manager at one of the defendant's business locations signed a separate contract for services. ***Id.*** at 154. In 1998, the plaintiff told the defendant that it would not be renewing the 1995 contract. At that time, the plaintiff told the defendant that it would hold the company to the terms of the contract signed in 1997 by its store manager. Thus, the breach of contract action filed by the plaintiff was based on the contract signed in 1997 by the store manager. ***Id.*** at 157.

The evidence in this case is similar to that submitted in ***Mechanics Laundry Serv.*** After Beers filed its motion to dismiss along with the Release, Four Seasons submitted affidavits asserting that Williams did not have authority to execute the Release. Gulledge stated in his affidavit that he and Mrs. Gulledge operate the business and "make any and all business and legal decisions" relating to Four Seasons. Gulledge claimed that his requests for payment of the Retainage funds "were made with the full understanding that if any of the Retained Funds were to be paid by Beers, and received by Four Seasons, it would not impact or legally waive any claims of Beers or Four Seasons against each other" regarding either the MAC or the Labor Claim. Gulledge acknowledged that he asked Williams to retrieve the check from Beers in February 2002, but stated that he gave Williams no authority "to waive, release or in any way impact any legal claim" on behalf of Four Seasons. He said that there was no copy of the Release in the company files, and that he did not even know the Release existed until his lawyer informed him of it. Appended to Gulledge's affidavit were copies of nineteen partial releases signed by Mrs. Gulledge during the course of the Project in exchange for partial payments made to Four Seasons. He claimed that only he and Mrs. Gulledge, as secretary-treasurer of Four Seasons, were authorized execute the releases on behalf of Four Seasons. Four Seasons also submitted Williams' affidavit, in which he acknowledged that he had no "independent authority on behalf of Four Seasons to sign any contract, legal document or make any decision concerning the release of any claim for any monies due and owning to or from Four Seasons." He admitted that his signature was on the Release, but said that he did not remember signing the document, and that he was not given a copy of it at the time it was signed. Further, Williams stated that he "certainly had no authority from Four Seasons to waive or release any claim."

In response to the evidence submitted by Four Seasons, Beers relied on the affidavit of Steve Morgan to show that Williams had apparent authority to bind Four Seasons. As noted above, Morgan made the global statement that it was not unusual in the industry for a project manager to pick up checks and execute releases in exchange for such checks. Morgan also said that, on unspecified other construction projects, "project managers for Four Seasons have collected contract balances and executed release documentation on more than one occasion." Morgan's affidavit included no details on these prior occasions and he did not attach to his affidavit any of the prior releases to which he referred. Morgan asserted generally that "representatives of Beers were of the opinion that Wendell Williams possessed the necessary authority to secure payment and execute release documentation," but he neither identified the Beers representatives to whom he referred, nor stated the basis for their belief that Williams had authority to execute the Release.

Under these circumstances, we must conclude that the evidence submitted by Beers is insufficient to establish as a matter of law that Williams had apparent authority to execute the

Release on behalf of Four Seasons.[4] Thus, Beers was not entitled to summary judgment on the basis of Williams' apparent authority.

Beers asserts on appeal that, regardless of Williams' authority to execute the Release, the Release is effective because Four Seasons ratified the Release by accepting the payment from Beers. Where a principal accepts the benefits of a contract signed by its agent, Beers argues, it is estopped from denying its agent's authority. *See Whitfield v. May*, 89 S.W.2d 764, 769 (Tenn. Ct. App. 1935). "Ratification is the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority to do so." *Bells Banking Co. v. Jackson Centre, Inc.*, 938 S.W.2d 421, 427 (Tenn. Ct. App. 1996); *see Webber v. State Farm Mut. Auto Ins. Co.*, 49 S.W.3d 265, 271 (Tenn. 2001). For ratification of a contract to exist, it must be shown that (1) the principal accepted the benefits of the contract; (2) with full knowledge of the facts; and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangement. *Bells Banking*, 938 S.W.2d at 427. Ratification is a question of fact to be determined from the surrounding circumstances, and there cannot be a ratification without proof of an intent to ratify. *Absar v. Jones*, 833 S.W.2d 86, 89-90 (Tenn. Ct. App. 1992).

In order to grant summary judgment to Beers based on ratification, Beers must establish as a matter of law that Four Seasons accepted the benefits of the contract with "full knowledge of the facts." *Id.* It is undisputed, however, that Four Seasons did not know about the existence of the Release at the time it accepted the payment from Beers, and that it was told about the Release by its counsel after this lawsuit was filed. Beers argues that Four Seasons, nevertheless, ratified the contract by failing to offer to return the money given in exchange for the Release once the Release was discovered. At the same time, Beers acknowledges that the funds held by Four Seasons were the Retainage funds held by Beers over the course of the contract. Four Seasons asserts that the Retainage funds it was paid at the time the Release was apparently executed were "undisputed" funds to which it would have been entitled in any event. When a party merely accepts a benefit to which it is already entitled, such conduct is too ambiguous to support a finding that the party intended to ratify the contract and accepts its terms. *See Duffy Tool & Stamping, Inc. v. Bosch Auto. Motor Sys. Corp.*, No. M1997-00144-COA-R3-CV, 2000 WL 122225, at *7 (Tenn. Ct. App. Feb. 1, 2000). Therefore, we cannot conclude that the evidence submitted to the trial court establishes as a matter of law that Four Seasons intended to ratify the Release signed by Williams.

---

[4]Beers argues that the nineteen partial releases submitted by Four Seasons, executed prior to the Release at issue, show that Four Seasons knew, or should have known, that a release would be required in exchange for any payment from Beers. Therefore, Beers argues, Four Seasons impliedly authorized Williams to execute the Release by sending him to pick up the check. However, even if Four Seasons should have expected that Williams would have been presented with some type of release in exchange for the payment, it would have expected the release to be typical of the other nineteen, that is partial releases which were limited in scope. The Release at issue in this lawsuit, however, was a final release, applying to "all claims, causes of action, suits, accounts, debts, and demands" arising out of the Project. Thus, the practice of requiring a partial release in exchange for a partial payment of funds does not support Beers' argument that Four Seasons took any action to cloak Williams with apparent authority to sign the Release at issue.

In sum, we conclude that the evidence is insufficient to establish as a matter of law that Williams had actual or apparent authority to execute the Release on behalf of Four Seasons, or that Four Seasons ratified the Release. Consequently, the trial court's dismissal of Four Season's complaint, based on the terms of the Release, must be reversed. All other issues raised in this appeal are pretermitted.

The decision of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this Opinion. Costs are to be assessed to Appellee Beers Skanska, Inc., for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE