Abu **ABSAR** and wife, Patricia Absar, Plaintiffs–Appellees,

v.

Frank E. **JONES**, M.D., Defendant–Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 29, 1992.

Application for Permission to Appeal, Denied by Supreme Court June 15, 1992.

William R. Willis, Jr., Marian F. Harrison, A. Russell Willis, Willis & Knight, Nashville, for plaintiffs-appellees.

John S. Hicks, William S. Walton, Dearborn & Ewing, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

We granted this interlocutory appeal, filed pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, to address the question of whether the trial court erred in setting aside an order in compromise and settlement of plaintiffs' claim against defendant.

Plaintiff Abu Absar suffered serious injuries when his motorcycle collided with a car driven by defendant, Frank E. Jones. Plaintiffs retained the services of Noble E. Pepper, an attorney who was then licensed to practice law in the state of Tennessee and was a member of the Davidson County Tennessee Bar, to represent them in a lawsuit against the defendant, Frank E. Jones.

With full knowledge of the plaintiffs, Pepper began settlement negotiations prior to filing a lawsuit. After these initial settlement discussions proved unsuccessful, Pepper filed suit against defendant Jones in November 1985. Plaintiffs sued defendant seeking $5,000,000.00 in damages alleging that defendant was negligent in failing to yield the right of way. After filing suit, Pepper continued settlement discussions with defendant's attorney. The Absars knew that Pepper was conducting settlement discussions on their behalf, but they did not expressly authorize Pepper to settle the lawsuit.

Nonetheless, Pepper purported to enter into an agreement to settle the case with defendant and defendant's insurer, United Services Automobile Association (USAA). This settlement agreement provided for a $325,000.00 cash payment to the Absars and an annuity for Mr. Absar's benefit which would have paid him $15,000.00 a year for life. Pepper forged the Absars' signatures on the release and settlement agreement. Pursuant to this purported settlement, Dr. Jones and USAA delivered a settlement check for $325,000.00 to Pepper and purchased an annuity for the benefit of Mr. Absar. The check was made jointly payable to the Absars "and their Attorney Noble E. Pepper, Sr."

On 25 September 1987, the Circuit Court entered an order in compromise and settlement dismissing the action by agreement of the respective attorneys for the parties. Likewise, on 25 September 1987, Pepper and/or his wife forged the endorsement of the Absars to the settlement check and negotiated the check to Security Federal Savings and Loan by depositing the proceeds in Pepper's various trusts and personal accounts.

Pepper did not inform the Absars of the settlement or of the existence of the check.

Instead, he told the Absars that the trial was set for early 1988. In February 1988, when the Absars became suspicious about the answers they were receiving from Pepper concerning a trial date, the Absars decided to contact the Circuit Court clerk's office. They were then informed that their lawsuit against Dr. Jones had been settled and that an order in compromise and settlement had been entered on 25 September 1987 dismissing the suit.

By this time, Pepper had absconded with the proceeds of the settlement check. However, the Absars later learned that Pepper had paid $50,000.00 of the settlement proceeds to Vanderbilt Hospital on behalf of Mr. Absar to pay medical bills incurred by Mr. Absar as a result of the accident. This payment occurred without the Absars' knowledge. However, since learning of the settlement with Vanderbilt, the Absars have not repudiated the $50,-000.00 payment for the medical expenses.

In late February 1988, the Absars retained new counsel who was informed by defendant's counsel that Dr. Jones and his insurer USAA considered the matter settled. On 4 March 1988, the Absars' new counsel filed suit against Pepper and various banks in the Chancery Court for Davidson County seeking to recover the settlement proceeds. The March 4 complaint states in part as follows: "Plaintiffs respectfully show the court that defendant Noble E. Pepper, Sr. is justly indebted to them in the sum of $325,000.00, being the sum of the unauthorized settlement agreement negotiated and accepted by Mr. Pepper and held in trust for the plaintiffs' benefit." Pepper has since been prosecuted on various criminal charges and is no longer licensed to practice law.

Some six months later, on 26 August 1988, the Absars filed a motion in the Circuit Court seeking to have the 1987 order of compromise and settlement set aside.[1] Following a hearing, the court found that the Absars had not ratified the settlement and granted the plaintiffs' motion to set

aside the order of compromise and settlement. The court entered a "Memorandum and Order" and stated, in part, as follows:

In opposition to this motion, the defendant argued that by filing the action to attach Pepper's bank accounts and property, the plaintiffs ratified the settlement. This Court does not agree. From the beginning, the Absars repudiated the settlement, and their actions through counsel, particularly under the circumstances, did not suggest to the contrary. Simply because the Absars sought to "chase a thief" and stop his transference of any funds or property while simultaneously notifying the defendant and his insurer that the settlement was unacceptable does not constitute ratification. Indeed, defendant's insurer could have, and arguably should have, taken the same steps to protect the defendant and the status quo.

For all of the foregoing reasons, the court finds that the Absars did not accept the settlement and never ratified it. A client is not bound by his attorney's acceptance of a settlement or his dismissal of his action with prejudice unless the client has authorized it.

Accordingly, the judgment should be set aside, because the Absars did not know of, did not authorize, and never ratified the "Pepper" settlement.

We review the trial court's findings in this case pursuant to Tennessee Rule of Appellate Procedure 13(d), that is, with a presumption of correctness of the findings unless the evidence preponderates otherwise. Here, the evidence does not preponderate otherwise.

The defendant's first issue is: "The trial court erred when it set aside the 1987 dismissal because the Absars' actions in seeking collection of the proceeds of the settlement from Pepper, and the Absars' acceptance of the benefit of the payment of their medical bills ratified the settlement agreement."

---

1. Subsequently in 1989, the Absars, along with Dr. Jones' insurer filed a third action in Chancery Court against various depository institutions seeking recovery of the proceeds of the

$325,000.00 check which was negotiated without proper endorsement. The Chancery Court has stayed this action pending this Court's decision on this appeal.

Defendant insists that the plaintiffs' actions from the time they learned of the 1987 settlement by Pepper ratified the settlement and that the Absars are therefore precluded from disavowing the terms of the settlement and seeking any additional recovery from the defendant. The Absars vigorously insist that they never intended to ratify the settlement and that they conveyed their intention to defendant's former counsel.

■ The general rule in Tennessee is that an attorney cannot surrender substantial rights of a client, including agreeing to dismissal of litigation which permanently bars a client from pursuing his claim, without the express authority of the client. *Davis v. Home Insurance Co.*, 127 Tenn. 330, 337, 155 S.W. 131, 133 (1913); *Long v. Kirby–Smith*, 40 Tenn.App. 446, 459, 292 S.W.2d 216, 222 (1956). However, even though a client has not given his/her attorney the authority to settle his/her claim, they may ratify the settlement either expressly or by their actions. Once there has been ratification of the settlement, ratification may not be withdrawn. *Memphis Street Railway v. Roe*, 118 Tenn. 601, 619, 102 S.W. 343, 347 (1907).

In *Memphis Street Railway v. Roe*, plaintiff suffered injuries when his wagon collided with a street car belonging to the Memphis Street Railway. 118 Tenn. at 603, 102 S.W. at 343. Shortly after the accident, plaintiff employed an attorney who later compromised plaintiff's lawsuit based upon a forged power of attorney and received $1,000.00 in satisfaction of the plaintiff's claim. 118 Tenn. at 615, 102 S.W. at 346. The defendant Railway company delivered a check to the attorney which was payable jointly to the attorney and to Mr. Roe. However, the attorney provided his own genuine endorsement, forged the endorsement of Mr. Roe, and obtained the proceeds of the check. 118 Tenn. at 615–616, 102 S.W. at 346–347. The settlement and cashing of the check "were assiduously concealed from Roe for several months thereafter." 118 Tenn. at 616, 102 S.W. at 347. After surreptitiously settling the claim and obtaining the proceeds, Mr. Roe's attorney continued over a period of some four months to communicate with Mr. Roe implying that his case was pending and would continue to be prosecuted. Approximately four months after the claim was settled, Mr. Roe learned of the unauthorized actions of his attorney. 118 Tenn. at 616, 102 S.W. at 347.

After discovering the fraud, Mr. Roe took several steps to recover the proceeds of the settlement check from his attorney. Mr. Roe was the prosecutor on an indictment against his former attorney, an action which the Supreme Court found was designed to force the attorney to turn the proceeds of the settlement over to Mr. Roe. 118 Tenn. at 616–617, 102 S.W. at 347.

Sometime later the indictment was inexplicably retired and Roe repudiated what he had previously done in attempting to recover proceeds of the check and instituted suit against the railway company to recover for his injuries received in the accident. 118 Tenn. at 617–618, 102 S.W. at 347. The defendant railway company insisted that by initially proceeding against his former attorney, Roe had ratified the settlement. The Supreme Court agreed, stating: "We think there can be but one answer to this question, and that is, having committed himself by his conduct to that settlement, it is too late for Roe to repudiate it, and recover upon his original cause of action, even if it were conceded that such existed." 118 Tenn. at 617–18, 102 S.W. at 347. The Court further held that where a party has knowledge of a transaction in which another has held himself out to be the party's agent and then "pursues thereafter a line of conduct which is consistent alone with the theory that the agent was acting for him, then the doctrine of ratification applies, and it is immaterial whether a ratification was contemplated or not." 118 Tenn. at 618–620, 102 S.W. at 347–48.

■ The question of whether a principal ratifies the acts of his agent is a question of fact to be determined from all of the surrounding circumstances. 3 Am.Jur.2d Agency §§ 187, 372. There cannot be an effective ratification without intent. 3 Am. Jur.2d Agency § 187. And although intent

may be inferred from the principal's conduct and the surrounding circumstances, "ratification cannot ... be inferred from acts which may be readily explained without involving any intention to ratify." *Id.* at 688. *See* also *Wolford v. Scott Nickels Bus Co.*, 257 S.W.2d 594 (Ky.1953); *American Travel Corp. v. Central Carolina Bank & Trust Co.*, 57 N.C.App. 437, 291 S.E.2d 892 (1982).

■ The act of ratification must be voluntary, in the sense that, if the principal acts only because he is obligated to minimize the damages suffered by him as a result of the agent's unauthorized act, such action cannot be said to constitute ratification. 3 Am.Jur.2d Agency § 187 p. 688 (citing *Rakestraw v. Rodrigues*, 8 Cal.3d 67, 104 Cal.Rptr. 57, 500 P.2d 1401 (1972)).

■ In the instant case the filing of suit against their agent Pepper to stop the agent from dissipating funds received through the unauthorized use of the principal's signature is not per se a ratification of the agent's unauthorized act. While it may, unexplained, amount to a ratification, it is otherwise only one of the circumstances to be considered in arriving at the principal's intent. We are of the opinion that *Memphis Street Railway v. Roe*, 118 Tenn. 601, 102 S.W. 343 (1907) is not inconsistent with this position. In *Roe*, the Court stated:

> Where there is a full knowledge of the facts possessed by the principal, and he pursues thereafter a line of conduct which is consistent alone with the theory that the agent was acting for him, then the doctrine of ratification applies, and it is immaterial whether a ratification was contemplated or not.

118 Tenn. at 620, 102 S.W. at 348.

Here, the trial court, in setting aside the judgment, found: 1) The Absars did not file the suit against their attorney and the banks for the purpose of securing benefits from the unauthorized settlement to themselves but rather to cover all the bases of their uncertain legal obligations; 2) the Absars communicated to the attorney for Jones and his insurer their express repudiation of the unauthorized settlement; and 3)

the fact that attorney Pepper paid their hospital bill does not constitute voluntary retention by the Absars of benefits from the unauthorized settlement.

We are of the opinion that the evidence does not preponderate against the trial judge's findings. Tenn.R.App.P. 13(d).

The judgment of the trial court is affirmed with costs assessed to the defendant Frank E. Jones and the cause remanded to the trial court for the collection of costs and further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.