IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 10, 2007 Session

## JUDITH MAE HARBER AS TRUSTEE OF TRUST A FOR THE ESTATE OF EDWIN ERWIN, ET AL. v. BANK OF AMERICA, N.A., ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. 74942 T.D.     Donna M. Fields, Judge

No. W2007-00927-COA-R3-CV - Filed March 13, 2008

This is an action for breach of contract against a bank.  Plaintiff Trustee sued bank for breach of the terms of a certificate of deposit (CD) by allowing her husband, who was neither the depositor nor her authorized agent, to redeem the CD held in trust for a $100,000 cashier's check payable to Plaintiff as trustee.  The Plaintiff Trustee appeals the trial court's award of partial summary judgment to Defendant bank.  Despite the bank's breach of contract, Plaintiff Trustee was unable to maintain a suit founded upon her husband's lack of authority to redeem the CD.  The trial court found she ratified the redemption by previously filing suit against a different bank that had accepted the unendorsed cashier's check for deposit, opened a checking account in Plaintiff's name as trustee, and paid out the proceeds over Plaintiff's forged signatures.  The trial court concluded that by asserting ownership in the cashier's check and the unauthorized checking account in the previous suit, the Plaintiff Trustee had manifested a clear intent to affirm her husband's redemption of the CD.  We agree.  Even though Plaintiff Trustee pled alternative, inconsistent claims in the first suit, which is still pending, each claim was necessarily premised upon her husband's authorized redemption of the CD.  We accordingly affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Everett B. Gibson, Memphis, Tennessee, and Lawrence Harris, Memphis, Tennessee, for the Appellant, Judith Mae Harber.

H. Frederick Humbracht, Jr. and Kyle D. Neal, Nashville, Tennesee, for the Appellee, Bank of America.

**OPINION**

This dispute involves a series of transactions in which Judith Harber's (Ms. Harber) husband[1] allegedly depleted several trust accounts she had established in her capacity as trustee of Trust A and Trust B for the estate of her father. To recover the proceeds purportedly stolen by her husband, Ms. Harber filed multiple lawsuits[2] against the various banking institutions involved in these transactions. In the instant suit, Ms. Harber seeks to recover the proceeds from a $100,000 certificate of deposit (CD) that Mr. Harber improperly transferred to another bank and withdrew, allegedly without her authority or knowledge. The facts of this case arise from Mr. Harber's transactions with two banks, Boatmen's Bank and Community Bank of Germantown. The former redeemed the CD, and the latter accepted the unendorsed cashier's check for deposit into a new checking account. The banks have since been acquired, respectively, by Bank of America (BOA) and by First Tennessee Bank (FTB). For clarity and consistency throughout this opinion, we shall refer to Boatmen's Bank as BOA and to Community Bank of Germantown as FTB.

Mr. Harber redeemed CD number 35286 at BOA for a cashier's check payable to his wife as trustee.[3] After redeeming the CD, Mr. Harber opened a checking account in his wife's name, as trustee, at FTB and deposited the cashier's check, the only deposit, into the account. Ms. Harber signed the signature card for that account but could not remember if the account information was listed on the card at the time. She likewise testified that Mr. Harber procured her signature by telling her the bank had lost the card for one of their existing accounts. There was no endorsement on the back of the cashier's check; FTB instead stamped "[c]redited to the account of within named payee, absence of endorsement guaranteed" and presented it to BOA for collection. BOA paid it upon presentment.

According to Ms. Harber, over a period of time, Mr. Harber depleted the FTB account entirely by forging her signature on seventy-four (74) checks and depositing all but two (2) of them into the couple's joint checking account at FTB. Although the redemption of CD number 35286 occurred in December of 1989 and the last forged check had cleared by May of 1992, Ms. Harber

---

[1] The Harbers are no longer married. Harold Harber (Mr. Harber) left their thirty-four year marriage and the state on April 26, 1995. Ms. Harber obtained a divorce by default judgment on April 30, 1996.

[2] Ms. Harber filed her first lawsuit against Leader Federal Bank on May 25, 1995. *Harber v. Leader Federal*, 159 S.W.3d 545, 548 (Tenn. Ct. App. 2004). She then filed suit against Community Bank of Germantown, here identified as FTB, on August 24, 1995. Ms. Harber brought the instant action three months later, on December 21, 1995. Following an unfavorable result in her suit against Leader Federal, Ms. Harber appealed the decision to this Court, which affirmed in part and reversed in part. *Harber v. Leader Federal*, 159 S.W.3d at 556.

[3] All pertinent accounts and instruments bore the following wording or some close variation: "Judith Mae Harber, Trustee of the Estate of Edwin Erwin under Trust A."

-2-

asserts that she did not learn of the CD's redemption until April of 1995,[4] when she was attempting to close her mother's estate. There is little question, though, that FTB sent, and the Harbers received, monthly statements detailing all account activity.

The pivotal issue on appeal involves Mr. Harber's lack of authority to redeem CD number 35286. As the named trustee of Trust A, Ms. Harber was the only depositor and customer expressly authorized to generate activity in the account. It is undisputed, however, that she relied on her husband to carry out certain tasks often expected of a trustee. For example, her husband deposited interest checks into the trust accounts and reviewed all of the trust account statements. Indeed, Ms. Harber did not review any bank statements from the time of the CD's redemption until her purported discovery of the dissipation of the funds. After this discovery, she located copies of the cashier's check and other bank statements in her own home.

Ms. Harber first filed suit against FTB, the last bank involved in this series of transactions,[5] on August 24, 1995. According to Ms. Harber, FTB had opened the checking account in her name (as trustee) under the direction of her husband, accepted the unendorsed cashier's check from her husband, and paid out the proceeds over her forged signatures. She alleged conversion of the cashier's check and, alternatively, breach of the account agreement by paying the checks over her forged signature.[6] It appears that the parties have conducted discovery, and the case is still pending.

On December 21, 1995, the plaintiff filed suit against Mr. Harber and BOA, the first bank involved in this series of events. In the suit against BOA, the plaintiff alleged breach of contract for the unauthorized redemption of the CD and, alternatively, a claim (drawer's liability) founded upon the bank's provision of the cashier's check in exchange for the CD. She requested breach of contract damages that included the value of the CD, the return of the cashier's check, and prejudgment interest calculated according to BOA's duty to pay CD interest for the successive periods of automatic renewal.

The gravamen of the complaint was that Mr. Harber lacked authority to redeem the automatically renewable CD and to accept the cashier's check on her behalf. On the back of CD number 35286, the "AUTOMATIC RENEWALS" term provided as follows:

> Depositor may prevent the automatic renewal of this deposit by giving Bank written notice prior to a renewal date of Depositor's intention that this deposit not be

---

[4]Ms. Harber does acknowledge that, as early as December of 1994, she became aware that approximately $20,000 of trust funds were missing from other accounts.

[5]The lawsuit against FTB involved other claims arising from transactions not at issue here.

[6]The amended complaint set out the facts pertaining to these claims but did not expressly aver breach of contract. The plaintiff, however, insists that this omission was an oversight and that she indeed intended to assert this alternative claim. Pursuant to the provisions of Rules 8.01 and 8.06 of the Tennessee Rules of Civil Procedure, we shall construe the complaint as urged by the Plaintiff/Appellant.

renewed, or by personally presenting this certificate or confirmation issued to the Depositor on or within ten days . . . after a renewal date.

Ms. Harber contended that the terms of the non-transferable, non-negotiable CD required that she personally present the CD to redeem it. Thus, according to the plaintiff, the bank breached its contract by allowing someone other than her to present the CD for redemption.

BOA did not dispute that it paid CD number 35286 by presenting to Mr. Harber a cashier's check for $100,000 payable to Ms. Harber as trustee. Instead, it contended that it did so upon Ms. Harber's full and proper endorsement. Ms. Harber had signed the back of the CD, and her husband, obviously, had possession of it prior to redeeming it. Ms. Harber admitted the CD bore her signature but testified that she did not recall when or why she signed it. She asserted that she did not sign the CD for the purpose of redeeming it, nor did she instruct her husband to do anything with the CD.

The trial court considered the matter on cross motions for partial summary judgment. Ms. Harber sought summary judgment against BOA only on the CD claim. Likewise, BOA sought summary judgment on the CD claim and relied upon ratification and the statute of limitations as bases for its dismissal. The trial court filed a memorandum opinion awarding partial summary judgment to BOA in September of 2005. It first noted that the nature of the case was breach of contract, and not conversion, as asserted by BOA. It then found that Mr. Harber had stolen the assets of Trust A by forging the FTB checks. Yet, it also determined that Ms. Harber had benefitted from these acts because the funds were deposited into the couple's joint checking account and, to some extent, helped maintain their shared standard of living. The court concluded that BOA had indeed breached the renewal term of the contract when it allowed Ms. Harber's husband, who was neither the depositor nor her expressly authorized agent, to redeem the CD.

Nonetheless, the court ruled that Ms. Harber had ratified her husband's unauthorized acts by first filing suit against FTB. It stated that

[t]he Plaintiff's claim to retrieve funds withdrawn by Mr. Harber at CBG asserts her interest in the account at CBG and, thereby, her assent to the redemption of the CD at Boatmen's. Also, there is evidence that the Plaintiff at times benefitted from the money that was available from the CBG account as she made checking withdrawals from Mr. and Mrs Harber's CBG joint account. It is her action against CBG to retrieve the unauthorized withdrawals by Mr. Harber from CBG, though, that evidences the Plaintiff's intent to ratify the transaction with the Defendant, Boatmen's. The Court notes the Plaintiff's argument that Rule 8.05(2) of the Tennessee Rules of Civil Procedure permits her to assert alternative inconsistent claims; however the Court finds that *Leader Federal* and *Webber* are controlling in this factual situation.

In its January 2006 order denying Ms. Harber's motion to reconsider, the trial court found that her conduct "as a whole amount[ed] to a ratification of Mr. Harber's actions." Upon Ms.

Harber's request, the trial court dismissed her claim against Mr. Harber without prejudice and, with her consent, subsequently dismissed the remaining claims against BOA with prejudice in its final order of March 2, 2007. Ms. Harber filed her notice of appeal ten days later.

### *Issues Presented*

Ms. Harber presents the following issue for review on appeal:

Did the trial court err in holding that Plaintiff ratified the unauthorized redemption of CD No.35286 (and the unauthorized payment of the cashier's check, which Defendant drew in purported payment of CD No. 35286) when she brought a claim or claims against First Tennessee Bank to recover the proceeds of the CD?

BOA, on the other hand, restates the above issue and raises an additional one:

(1)     [Did] the trial court correctly [hold] that Appellant's actions, as a whole, ratified Harold Harber's previously unauthorized redemption of a certificate of deposit?

(2)     [Alternatively, did] the trial court [err] in failing to apply the three (3) year statute of limitations on conversion of non-negotiable instrument, i.e., a certificate of deposit, rather than a six (6) year breach of contract statute of limitations?

### *Standard of Review*

We review an award of summary judgment *de novo*, affording no presumption of correctness to the conclusions of the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn.2002). An award of summary judgment is appropriate if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Tenn. R. Civ. P. 56.04. When a party has submitted a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the

inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588.

## *Analysis*

On appeal, Ms. Harber contends[7] that mere pleading cannot establish ratification, particularly when one pleads alternative, inconsistent claims in conformance with Tennessee Rule of Civil Procedure 8.05(2).[8] She asserts the trial court erred by failing to acknowledge the alternative claims set forth in her complaint. She further argues that these facts fall under the theory of election of remedies and that, under that theory, the trial court likewise erred. On the other hand, BOA argues that *Harber v. Leader Federal* controls this case, as the only factual distinction is the identity of the bank. It contends that Ms. Harber ratified the actions of her husband because she first sued FTB and asserted her ownership of the account established with the BOA cashier's check. In the alternative, BOA argues that the gravamen of her complaint is conversion, not breach of contract, and that the three-year statute of limitations on actions in conversion bars her claim.

For the following reasons, we conclude that the trial court did not err when it held that Ms. Harber ratified her husband's redemption of CD number 35286 by first filing suit against FTB. First, the record supports ratification as a matter of law because Ms. Harber's conduct prior to and including the filing of the FTB suit evidences only an intent to ratify her husband's redemption of the CD; it cannot be otherwise explained.

> Ratification is the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority so to do. Ratification is confirmation after conduct . . . .
>
> There must be an intention to ratify, but that intention is rather manifested by the principal's acts and statements than by his professions, and the circumstances may

---

[7] Combined, Ms. Harber's appellate arguments in her principal and reply briefs exceed ninety pages. Rule 27(I) of the Tennessee Rules of Appellate Procedure establishes a seventy-five (75) page limit, allowing up to fifty (50) pages for the principal argument and twenty-five (25) for the reply argument. Tenn. R. App. P. 27(I). Although this rule allows a party to secure court permission to exceed these limits, Ms. Harber has not done so in this case.

[8] Rule 8.05(2) provides that

[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he or she has, regardless of consistency.

Tenn. R. Civ. P. 8.05(2).

-6-

be such that the law will recognize a constructive intention to ratify when none was actually intended.

*Bagley & Co. v. Union Buffalo Mills Co.*, 9 Tenn. App. 63, 68 (1928), 1928 WL 2173, at *4 (Tenn. Ct. App. Nov. 24, 1928), *quoted in Gay v. City of Somerville*, 878 S.W.2d 124, 127 (Tenn. Ct. App. 1994). Because ratification is a function of the principal's intent, it is a question of fact. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 270 (Tenn. 2001). Yet, when the actions of the principal evidence an intent to ratify the unauthorized act or are justifiable only if there is a ratification, a court may find that ratification has occurred as a matter of law. *Id.* Under such a circumstance, the question of whether the principal contemplated ratification may become immaterial so long as the principal pursues this course of conduct with full knowledge of the facts relevant to the unauthorized acts. *See id.*

Our courts have long held that the filing of a suit to enforce an otherwise unauthorized contract constitutes a ratification of it. *Id.*; *Memphis St. Ry. Co. v. Roe*, 102 S.W. 343, 348 (Tenn. 1907); *Gracy v. Potts*, 63 Tenn. 395, 396 (1874). Indeed, where the plaintiff's conduct prior to suit comports only with the intent to affirm the unauthorized act and where the plaintiff then sues to enforce the allegedly unauthorized contract, ratification has occurred as a matter of law. *Webber*, 49 S.W.3d at 273.

For example, in *Webber v. State Farm Mutual Automobile Insurance Co.*, the Tennessee Supreme Court held that a party's previous act of bringing suit to enforce an automobile insurance policy manifested a clear intent to ratify it and thus precluded the plaintiff's subsequent suit to challenge a coverage limit contained in the policy. *Id.* In that case, the plaintiff filed suit against his automobile insurance carrier to secure payment under his uninsured motorist policy. *Id.* at 268. The plaintiff's mother-in-law had originally obtained the insurance and requested the statutory minimum amount for uninsured motorist coverage. *Id.* The plaintiff, however, sought the higher amount under the standard coverage. *Id.* He then filed a separate complaint seeking a declaration of the policy limits and argued that his mother-in-law had requested the statutory minimum without his authorization. *Id.* The trial court awarded summary judgment to the defendant, finding that the plaintiff was bound by the policy limit. *Id.* The Tennessee Supreme Court upheld this result, ruling that the plaintiff's act of suing upon the insurance contract constituted a ratification of his mother-in-law's conduct, *in toto*, thus binding him to the terms she negotiated. *Id.* at 272–73. Because he brought suit to obtain benefits under the policy, he ratified the contract as a matter of law. *Id.* at 272. The court further noted that the plaintiff's conduct prior to filing suit comported only with an intent to ratify the policy. For example, he had paid his premiums every six months over a period of ten years. Indeed, rather than repudiating the contract during that time, he transferred the policy at least twice without altering its terms. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 272-273 (Tenn. 2001). The court concluded that:

> because all of the plaintiff's actions are consistent only with his intention to fully adopt and ratify the contract, the plaintiff's suit on the insurance contract may be said, as a matter of law, to evidence his intention to ratify the contract.

*Id.* at 273.

In contrast, when the plaintiff's decision to file suit is justifiable for reasons unrelated to ratification, the court cannot conclude that ratification has occurred as a matter of law. *Absar v. Jones*, 833 S.W.2d 86, 90 (Tenn. Ct. App. 1992). In *Absar v. Jones*, this Court affirmed a finding of no ratification where intentions other than ratification had prompted the plaintiffs to file suit. *Id.* In that case, the attorney for the plaintiffs in a personal injury lawsuit entered into a settlement agreement without their authority and absconded with the proceeds. *Absar*, 833 S.W.2d at 88. After discovering this fact, the plaintiffs filed suit against the attorney to recover the proceeds. *Id.* Subsequently, when the plaintiffs moved to set aside the order in compromise and settlement, the defendants argued that their suit to recover the proceeds amounted to a ratification of the unauthorized settlement agreement. *Id.* The trial court disagreed, granted the Absars' motion, and set aside the order. *Id.* This Court affirmed the action of the trial court because, in part, the Absars' decision to file suit stemmed from their desire to stop further dissipation of the proceeds and to cover the bases of their uncertain legal obligations. *Id.* at 88, 90. Further, they had consistently and expressly repudiated the settlement in communications with the defendant's attorney and insurer, thus evincing their intent not to ratify it. *Id.*

Unlike the plaintiffs in *Absar*, who filed suit with motivations other than securing the benefits of an unauthorized contract, Ms. Harber, in *Harber v. Leader Federal*, sought recovery of funds dissipated by her husband as well as the interest generated in an unauthorized account. *Harber v. Leader Federal*, 159 S.W.3d 545, 548 (Tenn. Ct. App. 2004). In *Harber v. Leader Federal*, the record revealed that Mr. Harber had redesignated a matured large denomination certificate (LDC) as an Instant Access Account bearing the same account number and depositor name. *Id.* at 547–48. After effecting the change to an interest-bearing account without Ms. Harber's authority, Mr. Harber then withdrew all the funds. *Id.* at 548. This Court held that Ms. Harber had ratified her husband's improper redesignation of the account by suing to enforce the Instant Access Account provisions. *Id.* at 553. Of particular importance was Ms. Harber's attempt to recover the interest generated in the account that, but for her husband's unauthorized act, would not exist. *Id.* On that subject, we stated as follows:

> In this case, Plaintiff seeks damages primarily arising from the loss of her $100,000 deposit. This portion of her suit certainly does not support a finding of ratification, as she can demand these funds under the terms of the original LDC contract, while still contesting the validity of the conversion transaction. More problematic, however, is Plaintiff's attempt to recover the amount of certain interest checks that were paid to Husband over Plaintiff's forged signature. The interest checks in question were issued under the terms of the Instant Access account, which would bear interest indefinitely. The LDC, by contrast, had matured as of January 9, 1989, the date of the unauthorized conversion, and Plaintiff would not have received any interest checks after this date but for the conversion. Consequently, Plaintiff seeks to enforce a provision of the Instant Access account, while also denying that she agreed to its terms.

*Id.*

BOA contends that *Harber v. Leader Federal* is factually analogous to this case and thus is controlling. Ms. Harber, obviously, disagrees. Although this line of authority applies to this case and leads us to affirm the trial court's judgment, we view the facts in *Harber v. Leader Federal* as distinguishable from those at bar. We first note that, unlike the LDC in the suit against Leader Federal, the CD at issue here was automatically renewable and would have continued to generate interest income had it not been redeemed. In her suit against FTB, Ms. Harber sought to recover $100,000 plus contract interest and prejudgment interest, but we cannot conclude that she would have gained any additional benefit by seeking the interest generated in the FTB account. The most striking difference is that in *Harber v. Leader Federal*, Ms. Harber attempted to recover the funds in one lawsuit. For this reason, an assertion of alternative, inconsistent claims to recover the $100,000 could not result in ratification. Certainly, Rule 8.05(2) of the Tennessee Rules of Civil Procedure expressly allows for this manner of pleading.

In contrast to *Harber v. Leader Federal*, this case involves two lawsuits. Although Ms. Harber did plead alternative, inconsistent claims within each lawsuit as permitted by this rule, we cannot fairly conclude that the sets of claims in the separate lawsuits, as related to each other, are entitled to the same treatment. Indeed, we reject Ms. Harber's contention that the claims asserted in the first lawsuit are alternative to those asserted in the second. Had Ms. Harber filed one lawsuit against both banks or joined BOA in the FTB lawsuit, the relationship between the two sets of claims would certainly implicate Rule 8.05(2). But Ms. Harber has not attempted to recover the funds in one lawsuit.[9]

Ms. Harber ratified her husband's redemption of CD number 35286 by filing suit against FTB and asserting claims necessarily dependent upon the authorized redemption of the CD. We recognize that, unlike the plaintiff in *Webber*, Ms. Harber asserted alternative, inconsistent claims in her suit against FTB. In this particular situation, however, the distinction has no effect. Both claims were necessarily founded upon Mr. Harber acting as Ms. Harber's authorized agent in redeeming the CD and accepting delivery of the cashier's check. The contract claim based upon the payment of forged checks required Ms. Harber's affirmance of the opening of the checking account and the deposit of the cashier's check. Likewise, as acknowledged by Ms. Harber herself,[10] to assert

---

[9]We note that the record contains a belated motion for consolidation with the FTB suit, filed on September 18, 2006. Ms. Harber contended that the parties had been operating under the mistaken assumption that the suits had been consolidated when they had not. Nonetheless, there is a pertinent distinction between joinder and consolidation: in the former, all are parties to the same civil suit, whereas in the latter, the separate lawsuits maintain their separate nature but can be tried together, for example, to further judicial economy. Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 6-5(b), at 6-58 (2d ed. 2004).

[10]At various points in the record, Ms. Harber forcefully argues that the law required her or her authorized agent to take possession of the cashier's check before she could assert ownership of it. For example, in a response to BOA's statement of undisputed material facts, Ms. Harber disputed that the cashier's check was even issued, stating as follows:

(continued...)

her ownership of the cashier's check and its conversion by FTB, Ms. Harber was required to rely upon her husband's authority to accept its delivery on her behalf. The complaint against FTB asserts no claims that could be viable absent a ratification of the CD's redemption.

Ms. Harber argues that mere pleading, particularly in the alternative, cannot establish ratification. The focus of this inquiry is Ms. Harber's conduct: she filed suit against FTB, without joining BOA, and asserted claims dependent upon Mr. Harber's authority to carry out the subject transactions with BOA. The assertion of these claims is justifiable only if Ms. Harber had assented to the CD's redemption. Ms. Harber also contends that she could not have intended to ratify the redemption because she could not have known that her claims against FTB depended upon her assent to the redemption. In *Webber*, the Tennessee Supreme Court did not inquire into the plaintiff's understanding of the consequences of suing his insurance carrier. Plaintiffs represented by an attorney generally consult counsel before deciding to file a lawsuit: we can only presume that Ms. Harber did the same in this case.

Moreover, we can find no other explanation for filing suit in this manner. Unlike the plaintiffs in *Absar* who filed suit to stop further dissipation of the assets, it appears that the money had already vanished by the time Ms. Harber considered legal action. And, although the plaintiffs in *Absar* filed suit in an effort to cover the bases of their uncertain legal obligations—we presume the duty to mitigate damages—Ms. Harber justifies her strategy according to the uncertainty of the legal *outcome*, which is distinguishable from a legal obligation. As we noted above, Ms. Harber could have filed a single suit against both banks, either by original design or by the joinder of BOA, to determine who among the parties should bear the loss. This method would minimize, if not eliminate, the risk of the uncertain legal outcome noted by Ms. Harber.

Neither does Ms. Harber's conduct prior to the filing of the suit conflict with an intent to ratify her husband's actions. We cannot disagree with the trial court's conclusion that Ms. Harber derived some benefit from Mr. Harber's acts. Yet, the principal's receipt of benefits cannot amount to a ratification if done so in ignorance of the facts. *Webber*, 49 S.W.3d at 274. Ms. Harber contends she did not learn of her husband's unauthorized activity until April of 1995, after he had already left the state. At that point, Ms. Harber would have already received the benefits of these transactions. Although this receipt of benefits cannot establish ratification, it certainly does nothing

[10](...continued)
Defendant did not accomplish "issuance" of Cashier's Check No. 993612 because Mr. Harber was not Plaintiff's agent. The check was an unissued instrument and a commercial nullity, and Plaintiff obtained no ownership interest in it.

This response directed the court to Ms. Harber's brief in support of partial summary judgment in which she stated, "Unless Defendant can prove that Mr. Harber had the authority to redeem CD No. 35286, then Cashier's Check No. 993612 was an unissued instrument and a commercial nullity." In support of her proposition, Ms. Harber cited the former Article 3 of the Uniform Commercial Code in effect at the time of these events. According to her summary of the relevant provisions, "issuance of a negotiable instrument require[d] delivery of the instrument to a remitter or payee or to a person authorized to accept delivery on behalf of the payee." She added that the 1992 version of Tennessee Code Annotated section 47-3-102(a) defined "issue" as "the first delivery of an instrument to a holder or remitter."

to evidence a contrary intent under the circumstances. We note that Ms. Harber allowed her husband to carry on many tasks that she, as trustee, should have performed. She admitted that she did not review any bank statements for at least the five or six years between the CD's redemption and her discovery of his activity. Indeed, after Ms. Harber learned in December of 1994 that $20,000 in trust funds had disappeared, four months elapsed before she discovered her husband's wrongdoing. Moreover, we see nothing in the record to indicate that she took immediate, affirmative steps to verify the balances of other trust accounts after first discovering such a shortfall in funds.

The remaining issues require no further treatment. First, we find Ms. Harber's election of remedies arguments unpersuasive. Although she urges that this case requires this Court to reconcile ratification principles with Tennessee authority pertaining to the election of remedies, we remain unconvinced of the need to do so. Second, and finally, our holding regarding ratification pretermits the need to address BOA's statute of limitations argument.

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, Judith Mae Harber, and her surety, for which execution shall issue if necessary.

_____
DAVID R. FARMER, JUDGE