IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 4, 2021

## CITY OF MEMPHIS, TENNESSEE v. BEALE STREET DEVELOPMENT CORPORATION

**Appeal from the Chancery Court for Shelby County**
**No. 99-0612  Jim Kyle, Chancellor**

_____

**No. W2020-00523-COA-R3-CV**

_____

After counsel announced that the parties had settled their differences, the trial court entered a consent judgment dismissing all claims with prejudice.  One year later, one of the litigants moved to set aside the judgment arguing lack of consent and fraud.  The moving party claimed that it never approved the settlement or consented to entry of the dismissal order.  The trial court denied the motion.  Because the trial court's decision was not an abuse of discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellant, Beale Street Development Corporation.

Casey Shannon and Brian S. Faughnan, Memphis, Tennessee, for the appellee, City of Memphis, Tennessee.

## OPINION

### I.

Litigation between the City of Memphis and Beale Street Development Corporation began in 1999.  Sixteen years later, the parties, through counsel, announced to the court that they had "compromised and settled all matters at issue between them . . . , as evidenced by a written settlement agreement, and that all claims . . . should be dismissed with

prejudice." On February 17, 2015, the court entered a Consent Order of Dismissal with Prejudice.

One year later, on February 16, 2016, under Tennessee Rule of Civil Procedure 60.02, Beale Street moved to set aside the final judgment. The corporation claimed that its governing board never approved the settlement agreement and that the signature on the settlement agreement was a forgery.

The City of Memphis argued that Beale Street was not entitled to Rule 60.02 relief. The City pointed out that a Beale Street representative participated in the settlement discussions and Randle Catron, the corporation's executive director, signed the settlement agreement on February 3, 2015. And Beale Street had accepted the City's settlement payments for five months before abruptly changing course.

Both sides submitted affidavits and other documentary evidence in support of their claims. Beale Street submitted sworn statements from the individual members of its governing board and its current executive director, Lucille Catron. The board members acknowledged that attorney John Candy had represented the corporation throughout this protracted legal battle. They also agreed that Randle Catron, the corporation's long time executive director, was authorized to speak for the corporation during the settlement negotiations. But they maintained that the board never approved the final settlement.

The board named Lucille Catron, the widow of Randle Catron, executive director shortly before her husband's passing in July 2015. Mr. Catron's health had been failing for some time. According to Mrs. Catron, her late husband's signature on the settlement agreement was forged. He was hospitalized on the day he supposedly signed the agreement. She acknowledged that Mr. Candy visited the hospital on February 3 with settlement papers in hand. But when he tried to obtain her husband's signature, Mrs. Catron ripped the signature page away. A forensic document examiner also opined that the signature on the settlement agreement did not belong to Randle Catron.

The City filed affidavits from Jesse Lee, Beale Street's former accountant, and Mr. Candy. Mr. Lee explained that Mr. Catron hired him in 2008 to provide financial services for the corporation. In that role, he often reviewed the financial aspects of various settlement offers from the City. In 2014, Mr. Catron appointed him to represent the corporation in the ongoing settlement negotiations. His participation culminated in a written settlement agreement in early 2015. Throughout the settlement process, he maintained open communication with both Mr. Catron and individual board members.

Mr. Candy confirmed Mr. Lee's description of events. He also explained the circumstances surrounding the execution of the settlement agreement. On February 3, 2015, Mr. Candy took the agreement to the hospital for Mr. Catron to review. Mr. Catron, although in pain, appeared to be competent. After reviewing the agreement, Mr. Catron

2

signaled that he was ready to sign it. But when Mr. Candy gave him the agreement, Mrs. Catron physically assaulted him and tore the agreement. Mr. Catron admonished his wife. And Mr. Candy gave Mr. Catron another copy of the settlement agreement, which he signed.

The City also submitted other documentary evidence including a newspaper article, the executed settlement agreement, and copies of seven cancelled checks. In January 2015, the Memphis Commercial Appeal ran a front-page article featuring the impending settlement. And, in compliance with the settlement terms, the City paid Beale Street $65,000 between February and June of 2015.

According to Mrs. Catron, Mr. Candy never informed her of the settlement. She heard rumors. But she did not know that a settlement agreement had been executed until June or July of 2015. She was equally unaware of the City's settlement payments. As she explained, Mr. Lee deposited the funds in Beale Street's corporate account without the corporation's knowledge. She noted that Mr. Lee paid Mr. Candy's fee with the deposited funds. And he transferred some of the funds to Randle Catron's personal account.

After reviewing the evidence in the record, the court found that Beale Street failed to prove that it was entitled to Rule 60 relief. Proof that the board did not expressly approve the settlement agreement did not warrant setting aside the final judgment. And the record did not support Beale Street's fraud claims.

## II.

### A.

Beale Street argues that the Consent Order must be set aside because the board never expressly approved the settlement agreement. In Tennessee, an attorney cannot agree to dismiss litigation with prejudice "without the express authority of the client." *Absar v. Jones*, 833 S.W.2d 86, 89 (Tenn. Ct. App. 1992). Even so, once "a consent decree becomes final[,] it can only be attacked either by a suit against counsel who consented to it, or by a bill of review or some original action." *Kelly v. Walker*, 346 S.W.2d 253, 256 (Tenn. 1961).[1] Rule 60.02 has replaced former remedies for setting aside a final judgment. TENN. R. CIV. P. 60.02. Now, a "party who waits more than thirty days after entry of an order to

---

[1] Beale Street's reliance on *Kelly v. Walker*, 346 S.W.2d 253 (Tenn. 1961), as authority for setting aside the Consent Order is misplaced. *Kelly* was decided before adoption of the Tennessee Rules of Civil Procedure. *See Thomas v. Oldfield*, 279 S.W.3d 259, 262 (Tenn. 2009) ("The Tennessee Rules of Civil Procedure were adopted in 1970."). And it concerned a litigant's efforts to set aside a consent order before it became final. *Kelly*, 346 S.W.2d at 256; *see also Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976) ("Courts have always had the authority to modify, alter, amend or revoke judgments and decrees before they become final.").

seek relief must do so under Rule 60.02." *Hussey v. Woods*, 538 S.W.3d 476, 482 (Tenn. 2017); *see Silliman v. City of Memphis*, 449 S.W.3d 440, 451 (Tenn. Ct. App. 2014) (noting that Rule 60.02 applies with equal force to consent orders).

We review a trial court's ruling on a Rule 60.02 motion under the abuse of discretion standard. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). We consider whether "the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that cause[d] an injustice to the complaining party." *Id.* (quoting *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010)). This is not an opportunity for the appellate court to substitute its judgment for that of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). The "trial court's ruling 'will be upheld as long as reasonable minds can disagree as to [the] propriety of the decision made.'" *Id.* (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

Relief under Rule 60.02 is "an exceptional remedy." *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289, 294 (Tenn. 1992). The rule "was designed to strike a proper balance between the competing principles of finality and justice." *Jerkins*, 533 S.W.2d 275, 280 (Tenn. 1976). It "acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principal of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). "This escape valve 'should not be easily opened.'" *Hussey*, 538 S.W.3d at 483 (quoting *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 127 (Tenn. 2013)). So the moving party must prove "that it is entitled to relief by clear and convincing evidence." *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 336 (Tenn. 2010).

Rule 60.02 permits a trial court to set aside a final judgment for four specified reasons plus a catch-all provision. TENN. R. CIV. P. 60.02. Beale Street asked the trial court to set aside the Consent Order based on fraud and its contention that the judgment was void. *See* TENN. R. CIV. P. 60.02(2), (3). We conclude that the trial court's refusal to set aside the final judgment for these reasons was not an abuse of discretion.

Beale Street's fraud argument focuses exclusively on the alleged fraudulent conduct of its former attorney. Under Rule 60.02(2), a court may set aside a final judgment for "fraud . . . , misrepresentation, or other misconduct **of an adverse party**." TENN. R. CIV. P. 60.02(2) (emphasis added). To obtain relief based on Rule 60.02(2), the moving party must come forward with proof connecting an adverse party to the fraud. *See Everett v. Morgan*, No. E2007-01491-COA-R3-CV, 2009 WL 113262, at *7-8 (Tenn. Ct. App. Jan. 16, 2009) (affirming the trial court's decision to set aside a final order for fraud perpetrated by a friend of the adverse party when there was evidence connecting the adverse party to the fraud). Federal courts have reached the same conclusion when applying the identical federal rule. *See Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1102 (9th Cir. 2006) (holding that moving party was not entitled to set aside a final judgment based on her own

4

attorney's fraudulent conduct); 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2860 (3d ed. 1998) (explaining that fraud meriting relief under federal Rule 60(b)(3) "must be chargeable to an adverse party").

Beale Street failed to prove that it was entitled to set aside the Consent Order based on fraud. This record contains no evidence that the City of Memphis or its counsel engaged in any fraudulent activity. The express requirements of Rule 60.02(2) have not been met. *See Henderson*, 318 S.W.3d at 336 (noting that Rule 60 relief "is appropriate only in those relatively few instances that meet the criteria of the rule").

Beale Street also argues that the lack of express client consent rendered the Consent Order void *ab initio*. *See* TENN. R. CIV. P. 60.02(3) (permitting a court to set aside a void judgment). We disagree. "A judgment is not void . . . because it is or may have been erroneous." *Hussey*, 538 S.W.3d at 485 (alteration in original) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010)). Lack of client consent may void a settlement agreement, but it will not void a judgment. *See United States v. Krilich*, 152 F. Supp. 2d 983, 991 (N.D. Ill. 2001), *aff'd*, 303 F.3d 784 (7th Cir. 2002). A judgment is void only if the court lacked jurisdiction over the subject matter or the parties or if it concerned an issue wholly outside of the pleadings. *Turner v. Turner*, 473 S.W.3d 257, 270 (Tenn. 2015). That is not the case here.

We recognize that under different circumstances the conduct of a moving party's attorney may provide grounds for relief under section (1) of Rule 60.02. *See Terminix Int'l Co., L.P. v. Tapley*, No. 02A01-9701-CH-00028, 1997 WL 437222 at *4 (Tenn. Ct. App. Aug. 4, 1997) (fraudulent conduct of moving party's attorney met criteria for excusable neglect); *see also Krilich*, 152 F. Supp. 2d at 991-92 ("Modern cases denominate a motion to vacate based on an attorney lacking authority to enter into a settlement agreement as a Rule 60(b)(1) motion based on mistake or inadvertence."). But here, Beale Street failed to come forward with facts justifying its failure to avoid the mistake. *See Travis v. City of Murfreesboro*, 686 S.W.2d 68, 69-70 (Tenn. 1985). The Beale Street board was aware of the ongoing settlement discussions. The impending settlement was announced on the front page of the local newspaper. Seven settlement payments were deposited in Beale Street's corporate account. We find no evidence that Mr. Candy lied to his client about the status of the case. This record is silent as to Beale Street's efforts, if any, to remain abreast of the progress of the litigation or the settlement discussions.

And Beale Street failed to file its motion within a reasonable time. Rule 60 motions seeking relief from a judgment on the basis of excusable neglect or fraud must be brought within a reasonable time, no more than one year after entry of the judgment. Tenn. R. Civ. P. 60.02. "[O]ne year is the 'outer limit on the time allowed for filing the motion.'" *Furlough*, 397 S.W.3d at 128 (quoting *Rogers v. Estate of Russell*, 50 S.W.3d 441, 445 (Tenn. Ct. App. 2001)). Although Beale Street filed its initial Rule 60 motion within the one-year limit, on these facts, the motion was untimely. *See Rogers*, 50 S.W.3d at 445.

5

Beale Street was admittedly aware of the settlement by late June or early July of 2015. And yet the corporation inexplicably waited another six months or more to file its Rule 60 motion. "Rule 60.02 does not 'permit a litigant to slumber on [its] claims and then belatedly attempt to relitigate issues long since laid to rest.'" *Furlough*, 397 S.W.3d at 128 (quoting *Thompson*, 798 S.W.2d at 238).

## B.

The City asserts that this appeal is frivolous, entitling it to damages, including attorney's fees and expenses incurred on appeal. Under Tennessee Code Annotated § 27-1-122 (2017), an appellate court may award damages for a frivolous appeal. This statute "must be interpreted and applied strictly so as not to discourage legitimate appeals." *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977) (citing the predecessor to Tennessee Code Annotated § 27-1-122). A frivolous appeal is one "utterly devoid of merit," *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or "taken solely for delay," *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). This was not a frivolous appeal.

## III.

The trial court did not abuse its discretion in declining to set aside the Consent Order. Beale Street failed to prove that this is one of the exceptional cases meriting relief from a final judgment. So we affirm.

s/ W. Neal McBrayer
W. NEAL MᶜBRAYER, JUDGE

6