IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 9, 2020

## JON VAZEEN v. MARTIN SIR

**Appeal from the Circuit Court for Davidson County**
**No. 16C2388    Don R. Ash, Senior Judge**

_____

### No. M2019-01395-COA-R3-CV

_____

This appeal involves a fraud claim filed against an attorney by his former client. The attorney conceded that the client had been double-billed for some charges and repaid the client for those matters prior to trial. However, the client, now pro se, continued to pursue his claim for fraudulent billing, insisting that fraud extended to the entire invoice. He also claimed that the attorney had charged a higher hourly rate than agreed. After a bench trial, the trial court found that the client failed to demonstrate that the attorney intentionally misrepresented the amounts owed by the client and failed to present sufficient evidence of fraud. As such, the trial court dismissed the claim and granted the attorney's request for discretionary costs. The client appeals. We affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Jon Roozbeh Vazeen, Knoxville, Tennessee, Pro Se.

Tom Corts, Hayley Vos, and Dayne Geyer, Nashville, Tennessee, for the appellee, Martin Stephen Sir.

## OPINION

### I.    FACTS & PROCEDURAL HISTORY

Martin Sir is an attorney in Nashville. His law firm is called Martin Sir &

Associates. In February 2015, the firm began representing Jon Vazeen in his divorce case. After Vazeen complained about the associate attorney who was representing him, Sir took over the case in May 2015. On July 24, 2015, the firm sent an invoice to Vazeen with the charges for his representation thus far. Vazeen paid the full amount of the bill. However, Vazeen terminated Sir in September 2015 and accused Sir of overcharging him in the July 24 invoice.

On October 7, 2015, Sir prepared a corrected bill that removed some billing entries that admittedly had been duplicated. Unsatisfied, Vazeen wrote a letter to Sir stating that a court would decide whether Vazeen had any obligation to pay any of the remaining invoice items. Vazeen demanded "a legally binding explanation of legitimacy (i.e. supported by verifiable evidences) of each and every [one] of your invoice items." In light of the ongoing dispute, Sir did not immediately repay Vazeen for the duplicated amounts that Vazeen had already paid pursuant to the original invoice.

In January 2016, Vazeen filed a formal complaint against Sir with the Tennessee Board of Professional Responsibility. In September 2016, he filed this lawsuit against Sir. The complaint alleged that Vazeen had been damaged by Sir's "repeated unprofessional behavior and his fraud." Vazeen alleged that Sir had engaged in "unprofessional and damaging behavior" during his representation in the divorce case, which was "compounded" by Vazeen's discovery that Sir had "infus[ed] several thousand dollars of fake items in his invoice." As damages, Vazeen sought the return of approximately $20,000 in "direct monetary payments" made to Sir during the divorce case in addition to $10 million in punitive damages.

Senior Judge Don Ash was assigned to hear the case. Sir filed an answer, and discovery ensued. While the lawsuit was pending, the Board of Professional Responsibility dismissed the ethics complaint filed by Vazeen. Sir filed a motion for summary judgment, arguing that the legal malpractice claims asserted by Vazeen were barred by the statute of limitations and the fraudulent billing claim was barred by res judicata in light of the Board's dismissal of the ethics complaint.

Before the summary judgment motion was resolved, Vazeen filed a "Motion to Force [Sir to] Pay the Undisputed Overcharged Amounts." Based on the corrected invoice, Vazeen claimed it was undisputed that he had been overcharged $3,159. He requested a return of that amount plus 18 percent interest for a period of two and a half years, for a total of $4,937.77. In response to the motion, Sir paid Vazeen $3,948.75, which represented the admittedly duplicated charges of $3,159 plus interest at the rate of 10 percent for a period of two and a half years.

After a hearing, the trial court entered an order granting summary judgment to Sir on all claims. The trial court found that the complaint was untimely as to the theories of legal malpractice. As for the claim of fraudulent billing, the trial court noted that it was

unclear whether Vazeen was attempting to allege common law fraud or another theory of legal malpractice. But, in any event, the trial court found that the fraudulent billing claim was barred by res judicata due to the dismissal of the ethics complaint by the Board of Professional Responsibility. Vazeen filed a notice of appeal to this Court.

On appeal, this Court affirmed in part and vacated in part. *Vazeen v. Sir*, No. M2018-00333-COA-R3-CV, 2018 WL 6419134 (Tenn. Ct. App. Dec. 5, 2018). First, we determined that Vazeen had waived any issue regarding the legal malpractice claims for failure to reference them in his statement of the issues presented on appeal. *Id.* at *3. We also noted that even if the issue had not been waived, his argument would not have been successful because the undisputed facts established that his legal malpractice action was not timely brought. *Id.* Next, we considered the fraud claim. At the outset, we rejected the notion that the fraudulent billing claim sounded in legal malpractice. *Id.* at *4. We explained that not every claim challenging the conduct of a lawyer is a professional malpractice claim. *Id.* We concluded that Vazeen sufficiently alleged *intentional* misconduct in the form of a fraud claim.[1] *Id.* Finally, we considered whether the Board's dismissal of the ethics complaint required dismissal of Vazeen's fraud claim on the basis of res judicata. *Id.* at *5. We held that it did not, for two reasons. First, the Board was not a court of competent jurisdiction within the meaning of the res judicata analysis. *Id.* Secondly, the same claim was not asserted in both suits because the Board proceeding did not consider whether Vazeen should be awarded damages on his fraudulent billing claim. *Id.* at *6. As such, this Court vacated the entry of summary judgment on the fraudulent billing claim and remanded for further proceedings. *Id.*

After remand, the trial court held a bench trial on the fraud claim. The only witnesses were Vazeen and Sir. Fifty-three exhibits were introduced. Vazeen testified that Sir had defrauded him in several ways, which he separated into different categories. For one, he described the "fake" charges that he discovered on the original July 24, 2015 invoice. That invoice included the following itemized billing entries for work done by Sir:

| 6/22/2015 | Review of file in prep for Wife's Deposition. . . | 2:30 | 350.00 | 875.00 |
| 6/23/2015 | Deposition of Wife; Prep of Motion to Amend and Motion for Support and Attorneys Fees . . . | 5:00 | 350.00 | 1,750.00 |
| 6/24/2015 | Review of file in prep for Scheduling Order; Phone conference with Client and Opp. Atty. re: re-scheduling depo.; Email to Opp. Att. re: re-scheduling depo. . . . . | 0:18 | 350.00 | 105.00 |

---

[1] We noted Sir's alternative argument on appeal that fraud was not stated with particularity as required by Tennessee Rule of Civil Procedure 9.02, but we likewise found this issue waived due to Sir's failure to designate it as an issue presented on appeal. *Id.* at *4-5.

- 3 -

. . . .

7/22/2015    Review of file in prep for Wife's Deposition . . .2:30   350.00      875.00

7/23/2015    Deposition of Wife; Prep of Motion to Amend  5:12   350.00    1,820.00
and Amended Complaint For Support . . . .

Vazeen testified that the problem with this invoice was that the deposition on June 23 "never happened." Vazeen said as soon as he figured out that these "fake items" were included in the invoice, he fired Sir "right away." Vazeen acknowledged that Sir took these particular charges off of his bill when Sir issued the corrected invoice on October 7. The revised bill removed the aforementioned charges from June 22 and June 23. Still, Vazeen emphasized that Sir did not reimburse him for his payment of the removed charges until he filed this lawsuit. Vazeen noted that Sir had also included $368.57 on the invoice for the court reporter fee for the deposition, when Vazeen had already paid that expense directly, at Sir's request. However, Sir had included that sum in the amount he refunded Vazeen during this litigation. Thus, by the time of trial, Vazeen had been reimbursed for all of these duplicate charges, with interest. Still, Vazeen insisted that "the integrity of the entire invoice of Mr. Sir comes under question."

Another category of fraud that Vazeen alleged related to the hourly rates he was charged. Vazeen testified that he did not discover this issue until he was preparing for Sir's deposition and reviewing more detailed billing records. These records showed that Vazeen was charged $250 per hour for the associate attorney's work from the first billing entry on February 15, 2015, until April 14, 2015. Beginning with the next entry, on April 23, 2015, the associate attorney's work was inexplicably billed at the rate of $350 per hour. When Sir began working on the case on May 21, 2015, his work was also billed at the rate of $350 per hour. Vazeen insisted that he never agreed to pay $350 per hour and that he recalled agreeing to $250 per hour. Vazeen testified that he had called several different firms when initially searching for an attorney in 2014, and all of the attorneys he contacted charged $250 per hour. He introduced his handwritten notes reflecting names of attorneys and their prices, which included a notation for Sir & Associates at $250 per hour. He said it was his understanding that everyone was charging $250 per hour, and there is no way he would have agreed to pay more. Vazeen acknowledged that he had a contract with Sir but said that he could not locate the copy he signed.

During cross-examination, Vazeen acknowledged that Sir had produced a written contract purportedly containing his signature and dated February 11, 2015. The contract stated, "ATTORNEY'S FEE: Client will pay Attorney a non-refundable retainer of $5,000.00 as a minimum fee to be applied against an hourly rate of $375.00 per hour for Martin Sir's time, $350.00 per hour for associate attorney's time and $150.00 [f]or law clerk, legal assistant, or paralegal." However, Vazeen insisted that this was "a fake contract that they made up." Vazeen said that he did not personally meet Sir on the day the contract

- 4 -

was purportedly executed. He agreed that the contract contained what "look[ed] like" his signature but suggested that Sir either "changed the numbers" or copied his signature on a different contract. When asked what proof he had to support this theory, he reiterated that he had called several other attorneys who were all charging $250 per hour and that he would never have agreed to pay $350 or $375. He noted that the billing invoice shows that he was initially billed at the rate of $250 per hour for the associate's work, but after approximately two months, it increased to $350. Also, when Sir began working on the case, the rate remained at $350 per hour rather than $375 as stated in the contract. Vazeen acknowledged Sir's claim that his billing clerk must have initially made an error by setting the rate at $250 and then corrected it upon discovery. However, Vazeen suggested that this explanation was implausible because if that was the case, the clerk would have retroactively changed all billing entries to $350 rather than limiting the change to those entries going forward.

For the remaining categories of proof, Vazeen attempted to show that Sir was "not an honest broker" with respect to various other transactions. For instance, he claimed that Sir had asked him to pay for additional items that were not his responsibility but that he had refused to pay them. He claimed that Sir charged him too much for reviewing discovery matters and failed to object to certain issues within the discovery requests. He claimed that Sir was inadequately prepared for depositions and the parties' mediation and gave him incorrect advice about one issue. Vazeen alleged that Sir intended to "drag things on" in order to make more money. He also believed that Sir was "working with the opposing attorney" to damage Vazeen's position in the divorce case, although he acknowledged that he had no proof of this. Vazeen also argued that Sir's honesty should be questioned because of lawsuits filed against him, including suits by a debt collector and a former associate.

At the close of Vazeen's proof, Sir testified that he never intentionally inflated his hours or billing, nor did he do anything to try to deceive Vazeen or take money that had not been earned. Regarding the duplicate charges, Sir explained that when anyone at his firm bills time, he or she submits time sheets to the billing clerk, who puts the information into a bill. He testified that Vazeen's bill was reviewed before it went out but that it admittedly contained mistakes. Sir testified that this is why he chooses to use itemized billing statements, unlike some other firms, so that clients can look at the detailed list and bring any mistakes to his attention. Sir testified that when he attempted to communicate with Vazeen about the mistakes and offered to utilize the fee dispute committee of the Nashville Bar Association, Vazeen "lash[ed] out" at him and called him a "crook and other awful things." As a result, Sir decided not to deal with Vazeen directly but to await resolution of the Board proceeding and any litigation. He noted that Vazeen had contacted his credit card company and reversed a payment of $11,600 to his firm, which was eventually contested and restored. Sir testified that he did ultimately reimburse Vazeen, with interest, for the mistaken charges regarding the June deposition and the court reporter bill.

Sir acknowledged instances in which Vazeen had disagreed with his decisions during the divorce case, but Sir said he did not attempt to intentionally misrepresent facts to Vazeen, inflate his time, or overcharge him with the intent to get more money. He testified that he had never before been sued by anyone alleging that he was guilty of fraud or taking money inappropriately.

At the close of the proof, the trial court took the matter under advisement. The trial court subsequently entered a written order containing its findings of fact and conclusions of law. Initially, the trial court found that Vazeen hired Sir to represent him in February 2015 and that the parties' contract set the compensation rate at $375 per hour for Sir's time and $350 per hour for associate time. The trial court noted Vazeen's insistence that the contract was a forgery but found that he had "no proof thereof." Next, the trial court found that the July 24, 2015 invoice did contain duplicate charges but that a corrected invoice was issued and that Sir reimbursed Vazeen for those charges plus interest. Thus, the trial court concluded that Vazeen had failed to prove any damages resulting from the alleged misrepresentations regarding overbilling. Additionally, the trial court concluded that Vazeen had failed to demonstrate that Sir intentionally misrepresented the amounts owed. The trial court expressly found Sir to be a credible witness. In conclusion, the trial court found no proof, by a preponderance of the evidence, to support Vazeen's fraud claim, and it was dismissed.

Sir later filed a motion for discretionary costs, which the trial court granted. Vazeen timely filed a notice of appeal to this Court.

## II.   ISSUES PRESENTED

Vazeen presents the following issues for review on appeal:

1. Whether the trial court erred in dismissing the fraud claim; and
2. Whether the trial court erred in granting Sir's motion for discretionary costs.

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.[2]

## III.   DISCUSSION

---

[2] Generally, "[a]n attorney discharged without cause can [] elect to recover based on the full contract price or on *quantum meruit*, whichever is greater. . . . When an attorney is discharged for cause, the attorney is entitled to recover on the basis of *quantum meruit* or breach of contract, *whichever is less*." *Rose v. Welch*, 115 S.W.3d 478, 486 (Tenn. Ct. App. 2003). However, Vazeen has never raised any issue regarding whether Sir was discharged for cause or suggested that he should have been limited to fees on the basis of *quantum meruit*. As such, we have not addressed these issues on appeal.

### A. The Record on Appeal

Initially, we note that Vazeen's pro se brief on appeal states that he has cited some documents that were not included in the record on appeal. He claims that he attached two exhibits to his pretrial brief, which he submitted to the senior judge, but that he did not provide additional copies at trial because he considered his pretrial brief "part of his trial presentation."

The trial judge entered an order providing that only the exhibits introduced at trial should be made a part of the appellate record. However, the order also states that the trial judge "defers to the Appellate Court to make decisions about additional documents they deem necessary." Vazeen does not specifically ask this Court to request the additional documents, but he states that the trial judge "left the door open for this respectful court to request the missing documents if needed."

We find no basis for requesting any additional documents at this point. "'The appellate record provides the boundaries of an appellate court's review.'" *In re Neveah W.*, 525 S.W.3d 223, 248 (Tenn. Ct. App. 2017) (quoting *State v. Smotherman*, 201 S.W.3d 657, 660 (Tenn. 2006)). Pursuant to Tennessee Rule of Appellate Procedure 24(a), "trial briefs" filed in the trial court are to be "excluded from the record" on appeal. The Rule provides a procedure whereby a party can request the inclusion of "any papers specifically excluded in this subdivision." Tenn. R. App. P. 24(a). However, when Vazeen requested inclusion of his pretrial brief, the trial court clerk sent a letter stating that Vazeen's pretrial brief was not filed with the trial court. Further, after a remand by this Court for the trial court to resolve "all disputes over the content of the record," the trial court concluded that the record should be limited to the exhibits introduced at trial.

Rule 24(e) provides,

If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive. . . .

We discern no basis for departing from the trial court's decision to exclude Vazeen's pretrial brief and exhibits from the record on appeal. Although Vazeen now claims that he considered his pretrial brief to be "part of his trial presentation," the trial judge carefully explained to Vazeen at the beginning of the bench trial that any copies of documents he

- 7 -

had must be introduced into evidence.[3]  Consequently, Vazeen introduced 45 exhibits during the bench trial.  When Vazeen referenced his brief, the trial judge explained, "Your brief is not evidence."  Thus, we agree with the trial court's conclusion that the pretrial brief and its attached exhibits were not properly includable in the record on appeal.

## B. Fraud

"The law has never undertaken to precisely define fraud," recognizing that such an effort would be futile because fraud "assumes many shapes, disguises and subterfuges." *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012) (quotation omitted).  "The essence of fraud is deception. In its most general sense, fraud is a trick or artifice or other use of false information that induces a person to act in a way that he or she would not otherwise have acted."  *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005).  Although "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are all different names for the same cause of action, our supreme court has suggested use of the term "intentional misrepresentation." *See Hodge*, 382 S.W.3d at 342-43.

> To recover for intentional misrepresentation, a plaintiff must prove: (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Id.*  "The party alleging fraud bears the burden of proving each element." *Diggs v. Lasalle Nat. Bank Ass'n*, 387 S.W.3d 559, 564 (Tenn. Ct. App. 2012).

---

[3] As this Court has often noted,

> Parties who decide to represent themselves are entitled to equal treatment by the court. *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014).  The court should take into account that many pro se litigants have no legal training and little familiarity with the judicial system.  *Id.*  However, the court must also be mindful of the boundary between fairness to the pro se litigant and unfairness to the pro se litigant's adversary.  *Id.*  While the court should give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs, it must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.  *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

*Augustin v. Bradley Cty. Sheriff's Office*, 598 S.W.3d 220, 225 (Tenn. Ct. App. 2019) (quoting *Lacy v. Mitchell*, 541 S.W.3d 55, 59 (Tenn. Ct. App. 2016)).

### 1.  Allegations of Fraud in the Billing Entries

### a.  Duplicate Charges Resulting in Overbilling

One category of billing entries that Vazeen challenged as fraudulent involves the overbilling in the original invoice related to the deposition. Vazeen insists that Sir "fraudulent[ly] infused <u>fake items</u> in his invoice with the sole objective of making more <u>money</u>." However, the trial court's findings were to the contrary. The trial court expressly found that Sir was credible and that Vazeen failed to prove that Sir *intentionally* misrepresented the amounts owed.[4]

"Fraud involves a question of fact, and the facts must show an intent to deceive on a material matter." *Wilder v. Tennessee Farmers Mut. Ins. Co.*, 912 S.W.2d 722, 726 (Tenn. Ct. App. 1995) (citing *Womack v. Blue Cross and Blue Shield*, 593 S.W.2d 294 (Tenn. 1980)). "The question of intent is a question of fact for the finder of fact." *Dog House Investments, LLC v. Teal Properties, Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) (citing *Harber v. Bank of Am., NA*, 274 S.W.3d 649, 655 (Tenn. Ct. App. 2008)). The very nature of a fraud claim often requires "the actual hearing and viewing of witnesses whose credibility is of paramount concern for the trier of facts.'" *Volunteer Beer, Inc. v. Johnson*, No. 01A01-9703-CH-00126, 1997 WL 675456, at *4 (Tenn. Ct. App. Oct. 31, 1997) (quoting *Long v. State Farm Fire & Cas. Co.*, 510 S.W.2d 517, 519 (Tenn. Ct. App. 1974)). "Fraudulent intent is an issue best determined by a careful examination of the underlying facts and an evaluation of the credibility of the parties and witnesses." *Schorr v. Schorr*, No. 02A01-9107-CH-00 146, 1992 WL 108617, at *5 (Tenn. Ct. App. May 22, 1992) (quotation omitted). "If a witness has made false or fraudulent misrepresentations or has participated in a scheme of fraud and subsequently is called to the witness stand, under oath, to answer questions about such activities, regardless of his or her answers, his or her demeanor under such circumstances will provide some indication as to whether the charges are true, or not." *Id.* at *6.

Appellate courts "are required to defer to the trial court's credibility findings." *Williams*, 465 S.W.3d at 120. Trial judges are best situated to evaluate witness credibility because they are able to observe witnesses as they testify and to assess their demeanor. *Geller v. Henry Cty. Bd. of Educ.*, 602 S.W.3d 876, 889 (Tenn. 2020). As such, their credibility determinations will not be overturned "absent clear and convincing evidence to the contrary." *In re Connor B.*, 603 S.W.3d 773, 778 (Tenn. Ct. App. 2020).

---

[4] Despite the express credibility finding in favor of Sir, Vazeen suggests that the trial judge's statements at various points during the trial expressed "suspicions about [Sir's] fraudulent schemes." We do not necessarily agree with this characterization. But in any event, "'[i]t is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written orders." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015).

Giving due deference to the trial court's credibility determination, the record supports the trial court's conclusion that Vazeen failed to prove that Sir *intentionally* misrepresented the amounts owed. *See Styles v. Blackwood*, No. E2007-00416-COA-R3-CV, 2008 WL 5396804, at \*7 (Tenn. Ct. App. Dec. 29, 2008) (noting that the appellate court's ultimate conclusion as to promissory fraud was "guided in significant part by the trial court's credibility determinations"); *see also Tennessee Rand, Inc. v. Automation Indus. Grp., LLC*, No. E2009-00116-COA-R3-CV, 2010 WL 3852317, at \*16-17 (Tenn. Ct. App. Sept. 29, 2010) (concluding that a contractor's admission of "erroneous billing" did not rise to the level of fraud where it attempted to remove questionable charges and "had a colorable innocent explanation for the invoice"); *Wilder*, 912 S.W.2d at 726 ("While many of the statements in the various exhibits appear to be false, and many are inconsistent, we cannot say that the evidence preponderates in favor of a finding that the statements were made with the intent to deceive.").

### b. Remaining Billing Entries

Vazeen also points to various other billing entries and miscellaneous facts in an attempt to portray Sir as dishonest.[5] He notes Sir's involvement in other litigation and also claims that Sir intentionally made poor decisions while representing him in the divorce case. He criticizes how Sir and his staff handled a wide variety of matters ranging from written discovery and depositions to mediation, motions, and emails. Vazeen contends that these actions were intentional and fraudulent acts meant to damage his divorce case and all "part of [Sir's] defrauding schemes." Vazeen argues that it is necessary to examine all of these actions and circumstantial evidence due to the difficulty of proving Sir's intent.

We recognize that "fraud by its nature is often difficult to prove and thus may be properly proved by wholly circumstantial evidence." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001). "[I]t is often necessary to resort to conclusions from circumstances in order to show fraud since it is often cleverly disguised." *Vela v. Beard*, 442 S.W.2d 644, 651 (Tenn. Ct. App. 1968). "'The general rule is that the evidence to be

---

[5] Vazeen argues that once it was shown that Sir had "fake charges" on his original invoice, "every single item on [Sir's] invoice" became suspect, and the burden should have shifted to Sir to prove the validity of all other items billed throughout the entire divorce case, from February until Sir's termination in September. According to Vazeen, the trial court should have required "pro[of] of accuracy for every single item in the invoice." However, it is difficult to discern the legal basis for Vazeen's argument because he cites no authority in relation to this issue. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010); *see also Falanga v. Kirschner & Venker, P.C.*, 680 S.E.2d 419, 422-23 (Ga. Ct. App. 2009) (affirming summary judgment on a former client's fraudulent billing claim against attorneys where thirty initially disputed hours were eliminated from the bill by the attorneys, and to the extent that the remaining work was also challenged as fraudulent, it was insufficient for the former client to merely state that questions of fraud in the billing "put into doubt all [appellees'] billings").

sufficient to establish fraud should prove a state of facts which is not fairly or reasonably reconcilable with fair dealing and honesty of purpose, and which would lead a reasonable man to the conclusion that fraud in fact existed.'" *Hiller v. Hailey*, 915 S.W.2d 800, at 803 (quoting *Williams v. Spinks*, 7 Tenn. App. 488 (1928)). Having carefully considered all of the circumstances cited by Vazeen, the evidence does not lead this Court to the conclusion that fraud occurred with respect to these remaining issues.[6]

## 2.     Hourly Rates

Finally, Vazeen maintains that one of the ways he was defrauded was by Sir's "scheme" to charge $100 more per hour than Vazeen had agreed to pay. As proof of this alleged scheme, Vazeen points to his own testimony about his understanding of the fee agreement, his handwritten note evidencing that he spoke with other attorneys who were charging $250 per hour, and the invoices showing that he was charged $250 per hour for the first two months. The trial court found that "[t]he contract between [Vazeen] and [Sir] set [Sir's] compensation rate at $375 per hour and his associate's compensation rate at $350 per hour." The trial court noted Vazeen's allegation of forgery but found that he had "no proof thereof."

On appeal, Vazeen maintains that he never agreed to pay $350 per hour and that he was defrauded with respect to the hourly rate. Vazeen argues that "it was [Sir] who had to prove that the contract was not a forgery rather than [Vazeen] proving that it was." In response, Sir argues that the trial court correctly dismissed the fraud claim because "[w]hen a written instrument is challenged based on the allegation that a signature on the instrument has been forged, the burden of proving the existence of a forgery is on the party seeking to invalidate the instrument." *Ali v. Prof'l Real Estate Developers*, No. M1999-00082-COA-R3-CV, 2000 WL 192562, at *4 (Tenn. Ct. App. Feb. 18, 2000).

In our view, however, this case does not involve a simple allegation of forgery. It involves an allegation of fraud in connection with an attorney-client fee agreement. As a result, additional considerations come into play. "'An attorney-client agreement [] is subject to a higher level of scrutiny by the courts.'" *In re Estate of Ross*, No. M2014-02252-COA-R3-CV, 2015 WL 4557058, at *8 (Tenn. Ct. App. July 28, 2015) (quoting *Silva v. Buckley*, No. M2002-00045-COA-R3-CV, 2003 WL 23099681, at *2 (Tenn. Ct. App. Dec. 31, 2003)). "[A] contract between an attorney and a client is subject to extra scrutiny because it creates a fiduciary and confidential relationship between the parties." *Pepper & Bros. P.L.L.C. v. Jones*, No. M2013-01668-COA-R3-CV, 2014 WL 1370356, at

---

[6] To the extent that these allegations "require inquiry into whether professional standards were followed," the alleged breaches would lie in legal malpractice. *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 551 (Tenn. Ct. App. 2012); *see also Van Grouw v. Malone*, 358 S.W.3d 232, 237 (Tenn. Ct. App. 2010) (concluding that a client's fraud claim against an attorney was "in substance, one for professional malpractice"). We must bear in mind that Vazeen's legal malpractice claims were dismissed as time-barred.

*4 (Tenn. Ct. App. Apr. 4, 2014) (citing *Hager v. Fitzgerald*, 934 S.W.2d 668, 670 (Tenn. Ct. App. 1996)).

In *Alexander v. Inman*, 974 S.W.2d 689, 692 (Tenn. 1998), our supreme court considered a dispute involving attorneys who had sued a former client for unpaid fees. The court recognized that attorneys have a "high fiduciary duty of good faith in the formation of the [fee] agreement." *Id.* at 690. As such, one of the dispositive issues to be determined was "whether the attorneys satisfied their fiduciary duty of good faith with respect to the formation of the fee agreement." *Id.* at 692. The Court explained:

> The relationship of attorney and client is "extremely delicate and fiduciary"; therefore, attorneys must deal with their clients in utmost good faith. This level of good faith is significantly higher than that required in other business transactions where the parties are dealing at arm's length. *Cooper & Keys v. Bell*, 127 Tenn. 142, 150, 153 S.W. 844, 846 (1913); *Alexander* [*v. Inman*], 903 S.W.2d [686, 693 (Tenn. Ct. App. 1995)]. The client must be able to trust the attorney to deal fairly at all times, including during the negotiation of the attorney's terms of employment. *Cummings v. Patterson*, 59 Tenn. App. 536, 541, 442 S.W.2d 640, 643 (1968).
>     In this context, this Court has long held that an attorney is entitled to compensation in the amount agreed upon by contract, provided that the contract is fair at its inception and entered into in good faith. *Peoples Nat'l Bank of Washington v. King*, 697 S.W.2d 344, 346 (Tenn. 1985). In order to prove such good faith and fairness, an attorney seeking to enforce a contract for attorney's fees must show:
>
> > (1) the client fully understood the contract's meaning and effect,
> > (2) the attorney and client shared the same understanding of the contract, and
> > (3) the terms of the contract are just and reasonable.
>
> *Cooper & Keys*, 153 S.W. at 846 (citing *Planters' Bank of Tennessee v. Hornberger*, 44 Tenn. 531, 573 (1867)).

*Id.* at 693-94.

We recognize that the case before us does not involve a suit by an attorney who is seeking to recover unpaid fees. It involves a suit by a client, who had already paid the fees, seeking to recover them on the basis of fraud. However, this Court has applied the *Alexander* analysis to similar claims. *Stalls v. Pounders*, No. W2003-02933-COA-R3-CV, 2005 WL 181687, at *1 (Tenn. Ct. App. Jan. 27, 2005), was "an action filed by the former client of an attorney, seeking damages pursuant to the Tennessee Consumer Protection Act and theories of breach of contract, fraudulent misrepresentation, and common law fraud."

- 12 -

The trial court found that the parties' fee agreement was valid and granted summary judgment to the attorneys. *Id.* at *2. On appeal, we noted that the *Alexander* court had "enumerated several factors to consider when determining whether the attorney in that case could enforce a fee agreement against a client." *Id.* at *5. We conceded that the *Alexander* court had "utilized this test to determine whether an attorney may enforce a fee agreement against a client." *Id.* Still, we concluded that the *Alexander* test was "an appropriate test in the present case" as well because if the fee agreement was enforceable under the *Alexander* factors, then the client "could not have a claim against Pounders or the law firm" because she was not billed more than the fee agreement provided. *Id.* Again, the claims at issue included common law fraud. We held that the "validity and enforceability" of the agreement were "subject to the three part test of *Alexander v. Inman*." *Id.* at *6. Applying that test, we determined that the first two criteria were met but remanded for consideration of the third. *Id.* at *5-6.

We likewise find it appropriate to apply the *Alexander* criteria to this hourly rate dispute in the context of a client's fraud claim regarding the formation of the fee agreement. "Courts have imposed these conditions on attorneys in order to protect the client from any hint of unfairness or misunderstanding." *Silva*, 2003 WL 23099681, at *2. If the criteria are appropriately applied in a suit filed by an attorney to recover fees pursuant to a fee agreement, we find them equally appropriate in a suit filed by a client alleging fraud in connection with the formation of the fee agreement. And, as the court reasoned in *Stalls*, if the fee agreement is enforceable under the *Alexander* factors, then the client "could not have a claim" for fraud based on the hourly rate because he was not billed more than the rate the agreement provided. *Stalls*, 2005 WL 181687, at *5.

The three criteria from *Alexander* are whether:

(1) the client fully understood the contract's meaning and effect,
(2) the attorney and client shared the same understanding of the contract, and
(3) the terms of the contract are just and reasonable.

*Alexander*, 974 S.W.2d at 694.[7] Here, the trial court made the following findings about the formation of the contract:

1.    In February 2015, Plaintiff hired Defendant to represent him in a divorce proceeding.
2.    The contract between Plaintiff and Defendant set Defendant's

---

[7] This test "does not give clients an automatic escape from the contract by simply saying that their understanding of the agreement differed from the attorney's." *Silva*, 2003 WL 23099681, at *2. "If the agreement is clear and unambiguous the burden is on the client to show that the client did not have the same understanding as the attorney. A simple denial by the client is not sufficient. We think it follows that if the contract is not clear and unambiguous the burden is on the attorney to show that the client did understand it." *Id.* at *3 (citing *Alexander*, 974 S.W.2d at 694).

compensation rate at $375 per hour and his associate's compensation rate at $350 per hour. (Exhibit #5).

3.      Plaintiff believes the representation contract is a forgery, but has no proof thereof.

4.      A July 24, 2015 invoice indicates Defendant, at times, charged $250 per hour, while, at other times, he charged $350 per hour. (Exhibit #1). . . .

The *Alexander* factors were never mentioned throughout the trial court proceeding. In fact, surprisingly little evidence was introduced regarding the execution of the fee agreement. During his very brief trial testimony, Sir never mentioned anything about the execution of the contract, his hourly rate, or Vazeen's contention that he only agreed to pay $250 per hour. The record does not reveal any details about the day the contract was allegedly signed, who was present, or what discussions took place. Vazeen testified that he did not meet Sir until the day of a deposition, months after the contract was purportedly executed. He appeared to concede that he did execute a contract at some point, as he stated, "I could not find the original contract that I have signed, but my understanding was, as I was trying to show, I talked to all the other lawyers in town, that everybody was charging $250. And there was no reason for me to agree to pay Mr. Sir $350 at the time." Vazeen submitted his handwritten notes listing the names of various law firms with notes of $250 per hour, including Sir & Associates. The trial judge asked, "So did you agree with Mr. Sir to pay him $250?" Vazeen responded, "250, that's what I agreed with." Vazeen introduced Sir's deposition testimony in which Sir was asked about the sudden rate jump on the invoice from $250 to $350 for the associate's work. Sir suggested that "[t]he billing clerk must have realized that the rate was supposed to be 350 an hour, according to the contract." However, Vazeen questioned this because the corrected invoice still charged $250 for the first couple of months (a rate not mentioned in the contract) and the corrected invoice charged $350 for Sir's work (rather than $375 as stated in the contract). Vazeen believed the contract had been manipulated.

In light of the lack of findings and the lack of evidence regarding the relevant factors, we deem it necessary to remand this limited issue regarding the hourly rate to the trial court for further proceedings to include consideration of the *Alexander* criteria.

## C. Discretionary Costs

Rule 54.04 of the Tennessee Rules of Civil Procedure provides for an award of discretionary costs "to the prevailing party unless the court otherwise directs." Because we have partially reversed the trial court's ruling in favor of Sir on the fraud claim, necessitating further proceedings in the trial court, we also vacate the award of discretionary costs. *See, e.g.*, *Stanfill v. Mountain*, 301 S.W.3d 179, 195 (Tenn. 2009) ("In light of our holding vacating summary judgment in part, the award of discretionary costs is also vacated."); *Warwick v. Jenkins, Habenicht & Woods, PLLC*, No. E2012-00514-COA-R3-CV, 2013 WL 1788532, at *9 (Tenn. Ct. App. Apr. 25, 2013) ("As we have

reversed the grant of summary judgment with regard to Plaintiff's one claim relative to the stipulation, it is premature to consider Defendants the prevailing party. As such, we vacate the grant of discretionary costs. This issue may be revisited at a later time by the parties and the Trial Court, if necessary.").

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court in part, and we reverse in part. This case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed equally to the appellant, Jon Vazeen, and to the appellee, Martin Sir, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE